JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Grace Land II, LLC and New Freedom Behavioral Health, LLC, d/b/a Daybreak Treatment Solutions, on behalf of itself and its patients

## DEFENDANTS
Bristol Township, Craig Bowen, William J. McCauley, III, Tom Scott and Bristol township Zoning Hearing Board

**(b)** County of Residence of First Listed Plaintiff     Bucks County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant     Bucks County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pamela M. Tobin, Esquire (610) 941-2543
Kaplin Stewart Meloff Reiter & Stein, PC
910 Harvest Drive, PO Box 3037, Blue Bell PA 19422

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | Medical Malpractice | | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983; 42 U.S.C. 12101; 29 U.S.C. 793
Brief description of cause:
Unlawful refusal to issue by-right permit to operate drug and alcohol treatment center

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE                                    DOCKET NUMBER

DATE   12/13/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #               AMOUNT               APPLYING IFP               JUDGE               MAG. JUDGE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE LAND II, LLC<br>1288 Veterans Highway<br>Levittown PA 19056<br>and<br>NEW FREEDOM BEHAVIORAL<br>HEALTH, LLC, d/b/a DAYBREAK<br>TREATMENT SOLUTIONS, on its behalf<br>and on behalf of its patients<br>1288 Veterans Highway<br>Levittown PA 19056, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>JURY DEMAND |
| Plaintiffs | : | |
| v. | : | No. _____ |
| BRISTOL TOWNSHIP<br>2501 Bath Road<br>Bristol PA 19007<br>and<br>CRAIG BOWEN, individually and as<br>President of the Council of Bristol<br>Township<br>2501 Bath Road<br>Bristol PA 19007<br>and<br>WILLIAM J. McCAULEY, III,<br>Individually and as Bristol Township<br>Manager<br>2501 Bath Road<br>Bristol PA 19007<br>and<br>THOMAS SCOTT, individually and as<br>Bristol Township Zoning Officer<br>2501 Bath Road<br>Bristol PA 19007<br>and<br>BRISTOL TOWNSHIP ZONING<br>HEARING BOARD<br>2501 Bath Road<br>Bristol PA 19007, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | |
| Defendants | : | |

## COMPLAINT

### I.   INTRODUCTION

1.      Plaintiffs Grace Land II, LLC ("Grace Land") and New Freedom Behavioral Health, LLC d/b/a Daybreak Treatment Solutions ("Daybreak Treatment") file this lawsuit seeking declaratory, injunctive relief and damages against Defendants Bristol Township, Craig Bowen, William J. McCauley, Thomas Scott and the Bristol Township Zoning Hearing Board as a result of Defendants' discriminatory acts.  Plaintiffs assert claims under the United States Constitution, 42 U.S.C. §1983, the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §793.

2.      Plaintiffs bring this action to challenge Defendants' refusal to issue a by-right permit for operation of a medical office for the outpatient treatment of persons suffering from alcohol and drug addiction disorders at an existing commercially zoned property located in the Township.

3.      Grace Land sought a permit for Daybreak Treatment to provide medically supervised and licensed outpatient counseling treatment directed at rehabilitating persons living in the Township and its surrounding area who require treatment for alcohol or drug dependency.

4.      That Pennsylvania has been hit hard by the opioid epidemic is well established.  In 2016, Pennsylvania coroners and medical examiners reported 4,642 drug-related overdose deaths, an increase of 37 percent from 2015.  This translates into approximately 13 people dying of a drug-related overdose each day.  *See* 2018 Pennsylvania Opioid Task Force Report.  In Bucks County, 168 deaths by overdose were reported for 2016, a rate of 26.87 per 100,000 persons.  *Id.*

5.      Numerous studies have found that addiction to heroin and other opiates is a chronic medical illness that produces significant and lasting changes in brain chemistry and function. Numerous studies have also found that this medical illness can be effectively treated through

2

5516561v5

counselling and rehabilitation services. Daybreak Treatment seeks to provide such services in the Township.

6.        Federal law prohibits public entities, such as the Township, and public officials, such as the individual Defendants, from excluding persons with disabilities or discriminating against them in providing benefits, programs or activities. These protections extend to persons participating in drug rehabilitation programs, such as the program Daybreak Treatment seeks to provide. This action challenges this discrimination and seeks injunctive relief and damages.

## II.     JURISDICTION AND VENUE

7.        This action is brought pursuant to 42 U.S.C. §§1983 and 1988; the United States Constitution; the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.;* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794.

8.        This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1337, 1343(a) and 1391(b)(2), 29 U.S.C. §794(a), and 42 U.S.C. §12182(a).

9.        Venue lies in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391.

## III.    PARTIES

10.       Plaintiff Grace Land II, LLC is a Pennsylvania limited liability company, with a principal place of business located at 1288 Veterans Highway, Levittown, Pennsylvania.

11.       New Freedom Behavioral Health, LLC is a Pennsylvania limited liability company, doing business as Daybreak Treatment Solutions, with a business address of 1288 Veterans Highway, Levittown, Pennsylvania. Grace Land and Daybreak Treatment are affiliated entities in that Jonathan Goodman ("Goodman") is the sole owner of Grace Land and the majority owner of Daybreak Treatment.

5516561v5

12.     Daybreak Treatment provides outpatient treatment services for persons suffering from alcohol and/or drug addiction disorders.  Daybreak Treatment is licensed through the Pennsylvania Department of Drug and Alcohol Programs to operate and does in fact operate an existing medical office located in Middletown Township at 1288 Veterans Highway, Levittown, Pennsylvania.  Daybreak Treatment cannot obtain a license to operate the additional treatment facility it seeks to operate in the Township until the Township issues the permit allowing that use.

13.     Grace Land intends for Daybreak Treatment to operate a medical office providing outpatient treatment to persons disabled by alcohol and/or drug addiction disorders at the property which is owned by Grace Land and located at 2104 Bath Road, Bristol Township, Pennsylvania (Tax Parcel No. 05-029-092) (**"Property"**).

14.     Defendant Bristol Township ("Township") is a municipality organized and existing under the Pennsylvania First Class Township Code.  Its principal office is located at 2501 Bath Rd., approximately .2 miles from the Property.

15.     Defendant Bristol Township Zoning Hearing Board ("ZHB") was appointed in accordance with the Pennsylvania Municipalities Planning Code, 53 P.S. 10101 *et seq.*

16.     This action is brought against Defendant Craig Bowen both individually and in his official capacity as President of the Township Council.

17.     This action is brought against Defendant William J. McCauley both individually and in his official capacity as Township Manager.

18.     This action is brought against Defendant Thomas Scott both individually and in his official capacity as Zoning Officer.

5516561v5

## IV.   FACTUAL BACKGROUND

### A.   The Property

19.   On December 18, 2017, Grace Land purchased the Property from Inspire Federal Credit Union ("Bank").

20.   The Property comprises approximately 1.7 acres and is improved with a building containing approximately 9,758 square feet ("Building") and parking fields with spaces for approximately 59 vehicles.  An aerial photograph of the Property is attached as **Exhibit A**.

21.   The Property is zoned commercial.

22.   Under the Township Zoning Ordinance, a medical office for treatment of outpatients is a permitted use in a commercially zoned area.  Zoning Ordinance 205-16(C).

### B.   Daybreak Treatment

23.   Daybreak Treatment provides intensive therapeutic out-patient treatment to persons who have been diagnosed with substance abuse disorder or alcohol disorder.  Prior to enrolling, the vast majority of Daybreak Treatment's patients have completed an in-patient de-toxification program, removing illegal substance or alcohol from their systems prior to beginning treatment.  Before they are admitted to Daybreak Treatment's program, the applicants are required to submit to a urine screening to ensure that they are free of illegal substances and/or alcohol.  In addition, while they are in the program, the patients undergo random screenings to ensure that they remain free of illegal substances and/or alcohol.

24.   Patients enrolled in Daybreak Treatment's intensive therapeutic out-patient program are required to participate full-time in the program.  The program runs six hours a day for six days a week.  The majority of patients enrolled in the program are disabled to the point that they cannot hold regular employment due to their substance abuse and/or alcohol disorders.

5

25.     Daybreak Treatment wants to offer its substance abuse and alcohol rehabilitation services to more persons in the community than it does currently at its location on Veterans Highway in Levittown.  As a result of the toll taken by the opioid epidemic in this community, there is an urgent need for Daybreak Treatment to provide its rehabilitative services at the Property. There are simply not enough treatment centers in the community and the region to fulfill the great demand for treatment of persons addicted to opioids.

### C.     The Bank

26.     The Bank operated a retail branch as well as its corporate headquarters at the Property commencing in the early 1990's when the Property was acquired by the Bank. Prior to 2016 the Property was zoned for residential use.

27.     In November 2015, the Bank approached the Township about changing the Property's zoning to commercial.

28.     While the Bank's zoning application was pending, Township Council President, Defendant Craig Bowen told the Bank's president and CEO, James Merrill, that the Township did not have a problem with re-zoning the property as long as the Bank did not intend to sell the Property to a drug and alcohol treatment provider.  Mr. Merrill truthfully told Defendant Bowen that the Bank did not have a buyer in mind at the time.

29.     After Defendant Bowen had this conversation with Mr. Merrill, on July 26, 2016, the Township enacted an ordinance changing the Property's zoning to commercial.

### D.     Grace Land's Detox Application

30.     Over a year later, on September 8, 2017, the Bank entered into an agreement of sale with Grace Land to purchase the Property.

6

31.     Prior to entering into the agreement of sale, Grace Land's real estate broker Jack Kitchen ("Kitchen") had discussions with Defendant Bowen wherein he confirmed that a detox or treatment center could be operated in a commercially zoned area in the Township.

32.     After entering into the agreement of sale, on September 12, 2017, Grace Land hand delivered its application to the Township, requesting a use and occupancy permit to operate an in-patient de-toxification facility at the Property ("Detox Application").

### E.     Township's Immediate Opposition to the Detox Application

33.     Within days after the Detox Application was submitted, the Township Manager, Defendant William McCauley, telephoned Marc Kaplin, Esquire of Kaplin Stewart, the law firm representing Grace Land.  Defendant McCauley told Mr. Kaplin that the Township did not want a drug treatment facility at that location.  Defendant McCauley requested that Mr. Kaplin talk to his firm's client about acquiring another property up for sale to use for a treatment facility instead.

34.     Defendant Bowen made a similar request to Kitchen.   Specifically, Defendant Bowen told Kitchen at a meeting on or about September 18, 2017 that the Township had plans to build a water park next to the Property and that the Township did not want any drug or alcohol treatment facility at the Property.  Defendant Bowen made the statement that the drug and alcohol addicts would try to use the water park to take showers.  Defendant Bowen told Kitchen that Grace Land should not purchase the Property and instead should purchase the vacant school properties that the School District was offering for sale in the Township.

35.     In view of the communications from Defendant McCauley and Defendant Bowen, Grace Land's affiliate Progressive Living Units & Systems of Pennsylvania ("PLUS") submitted to the School District a good faith offer to purchase four of the five elementary schools located in the Township.  Specifically, on October 16, 2017, Kitchen delivered to the Township a letter of

7

intent for PLUS or its designee, to purchase four elementary schools from the School District for a total of $1.75 million. The offer was $800,000 more than the prior offers that the School District had received for the schools, which offers totaled $950,000.

36.     In the interim, the Township rejected Grace Land's Detox Application. Although the Township's denial was dated October 11, 2017, Grace Land did not receive the rejection until October 18, 2017.

37.     Kitchen arranged for Defendant Bowen to meet with Goodman, the primary principal of Grace Land and Daybreak Treatment, on October 19, 2018. At that meeting, Defendant Bowen told Goodman and Kitchen that the Township faulted the Bank for agreeing to sell the Property to Grace Land, when the Bank knew that the Township did not want a drug and alcohol treatment facility at the Property under any circumstances, and that the Township would not have approved the change to commercial zoning had it known that a drug and alcohol operator would buy the Property.

38.     On October 25, 2017, Grace Land submitted a challenge to the validity of the Township's ordinance in response to the Township's denial of the Detox Application.

39.     Someone from either the Township or the School District, with the Township's knowledge, sent a copy of PLUS's letter of intent to purchase the school properties to the local newspaper, the *Bucks County Courier Times*. That newspaper ran an article on October 28, 2017 about PLUS's offer to purchase the vacant school properties for $1.75 million. A copy of the 10/28/17 article is attached as **Exhibit B**. The article emphasized that PLUS owns recovery homes and that its affiliate, Daybreak Treatment, offers "detox and rehabilitation services for alcohol and substance abuse." *Id.*

8

40.     After the *Courier Times* article was published, approximately 250 to 300 people gathered at the School Board's November 13, 2017 meeting, vigorously objecting to the sale of the school properties to PLUS.  Some of the audience members were brandishing copies of the *Courier Times* article about PLUS's offer.  One participant who took the podium announced, "We have enough recovery homes in Bristol Township," at which the crowd erupted in applause. Another participant demanded to know information about the company which intended to buy the school properties.

41.     In response to the public outcry over PLUS's offer to purchase the school properties, on November 14, 2017, the Township Council decided to make a counter offer to the School District to purchase the five school properties for $1.75 million, with no contingencies, and with settlement to occur in January 2018.  While the Township purported to match PLUS's offer, PLUS's offer was to acquire four school properties whereas the Township's offer was to purchase five school properties.  In the November 14, 2017 meeting minutes, a resident is reported as stating that the residents are truly against recovery homes in their neighborhood.

42.     Thus, although Defendants McCauley and Bowen had encouraged Grace Land to acquire the school properties instead of the Property, and in reliance Grace Land subsequently caused its affiliate PLUS to make a good faith purchase offer, the Township then turned around and made its own offer so as to defeat PLUS's offer.  The Township, however, never made good on its offer to purchase the five schools.  Instead, the Township was simply scheming to delay Grace Land from being able to use the Property as a drug and alcohol treatment facility.

43.     At the November 14, 2017 meeting, the Township also approved retaining Fox Rothschild to oppose Grace Land's challenge to the validity of the Township ordinance.  Thus, the Township set the stage to do battle against Grace Land.

### F.    The Medical Office Application

44.    In view of the Township's denial of the Detox Application, on December 6, 2017, Grace Land submitted a second application to the Township for a permit to operate a by-right medical office at the Property to provide rehabilitation treatment services to persons suffering from alcohol and/or drug addictions on an outpatient basis ("Medical Office Application").[1]

45.    Defendant Zoning Officer Scott claimed that he could not process the Medical Office Application without first having: "information on the certification of the outpatient treatment methods by a board or agency authorized by statute to issue such certification"; (b) the proposed hours of operation; and (c) the plan for off-street parking. A copy of T. Scott's 12/28/17 letter is attached as **Exhibit C**.

46.    In response, Grace Land explained that Daybreak Treatment is precluded from obtaining a state license to operate a treatment center at the Property until the Township issues the permit allowing for that use. A copy of Grace Land's 2/2/18 response is attached as **Exhibit D**. Grace Land further explained that the medical office would be located in a 4,407 square foot portion of the Building. This is the same portion of the Building in which the Bank was operated its retail branch. *Id.*    Grace Land demonstrated that it would comply with the Township's off-street parking requirements under §205-120(7) of the Zoning Ordinance. The Zoning Ordinance requires a total of 37 parking spaces (4,407 square feet divided by 150 square feet (29) + one space for each of its 8 employees).

47.    When Grace Land heard nothing further, it sent a February 23, 2018 letter to the Township, requesting that the Township issue the use and occupancy permit, without further delay. A copy of Grace Land's 2/23/18 letter is attached as **Exhibit E**.

---

[1] The parties stipulated to hold Grace Land's validity challenge in abeyance.

5516561v5

48.     Instead, Defendant Scott sent a second letter, requesting more information on an incremental basis, this time: (a) a copy of the medical director's license and (b) Grace Land's plans for using the remaining vacant portions of the Building.  A copy of T. Scott's 2/28/18 letter is attached as **Exhibit F**.

49.     Grace Land complied with the request by providing a copy of the requested medical director's license and confirming that Grace Land had no current plans to utilize the rest of the Building.  A copy of Grace Land's 3/2/18 letter is attached as **Exhibit G**.  Grace Land further acknowledged that at such time when it does decide upon a plan for using the rest of the Building, it would then have to comply with the Township's permitting requirements.  *Id.*  Although Grace Land again requested that the Township issue the permit without further delay, the Township refused.

### G.     The Township's Denial of the By-Right Permit

50.     The Township delayed issuing a formal decision on Grace Land's December 6, 2017 Medical Office Application for four months, until April 10, 2018.  A copy of the T. Scott's 4/10/18 denial letter is attached as **Exhibit H**.

51.     The Township denied the Medical Office Application by claiming that it had not approved a split or separate use of a portion of the Building and therefore it "assumed for purposes of this determination that the entire building is proposed to be utilized for medical offices."  Exhibit H at p. 1.  Based on this false premise, the Township denied the Medical Office Application on the rationale that if the entire Building were to be utilized as medical offices, a total of 79 parking

5516561v5

spaces would allegedly be required and therefore Grace Land would not satisfy the Township's off-street parking requirements. *Id.* (citing §205-120(17) of the zoning ordinance).[2]

52.      By resorting to this fallacious argument, the Township tacitly acknowledged that Grace Land's intended use of a portion of the Building, *i.e.,* 4,407 square foot, for a medical office did in fact satisfy the Township's off-street parking requirements.

53.      Further, the Township's assertion that Grace Land needed permission to utilize only a portion of its Building was contradicted by the Township's having allowed the Bank for years to utilize a portion of the Building for a retail bank branch in the exact same 4,407 square feet portion of the Building, that Grace Land now desires to use for medical offices and at the same time the Township permitted the Bank to maintain its corporate headquarters in the remainder of the Building.

54.      Moreover, the Township's assertion that Grace Land would need 79 parking spaces was contradicted by the Township's having allowed the Bank for years to utilize the entire Building, notwithstanding that the Bank as a financial establishment was subject to the same off-street parking requirements as a medical office, *i.e.,* one space per 150 square feet in the Building plus one space for each employee *See* Zoning Ordinance §205-120(21).

55.      Thus, to deny Grace Land's by-right application, the Township came up with a trumped up and facially false pretext which directly contradicted its own history of having allowed the Bank to operate the Property for two separate and distinct uses and without satisfying the Township's same off-street parking requirements.  The Township has made it crystal clear that it desires to impose on Grace Land's proposed medical offices zoning requirements that it did not

---

[2] The Township's calculations failed to consider that the Building's square footage actually measured 9,785 square feet, rather than 10,524 square feet.  Additionally, there are 59 parking spaces currently at the Property, not 57 as the Township erroneously stated.

5516561v5

apply to the Bank even though the applicable provisions of the Zoning Ordinance applicable to medical offices and financial institutions are the same and that the Township would not allow a drug and alcohol treatment facility to operate in even a portion of the Building, notwithstanding that the Township Zoning Ordinance expressly permits that medical office use and the proposed use does not violate any Township Zoning Ordinance including the Township's off-street parking requirements.

### H.  The ZHB's Opposition and Denial

56.     Grace Land appealed the Township's denial of its permit to the ZHB on April 30, 2018.  At the May 14, 2018 hearing before the ZHB, Stacy Hill, an executive officer of Grace Land and Daybreak Treatment, testified under oath that Grace Land intends to operate the medical office solely in the 4,407 square foot portion of the Building and that Grace Land would apply for a permit to use the remainder of the Building once it had a plan for the use of that space.  The Township did not offer any evidence to contradict that sworn testimony.

57.     Ms. Hill further explained that Daybreak Treatment utilizes its own vans to transport patients to and from the counselling sessions and therefore the patients will not be operating vehicles to and from the Property.  Thus, contrary to the Township's pretext for denying the permit, *i.e.*, purported lack of off-street parking, patients will not actually need any parking. Daybreak Treatment contemplates having approximately 8 on site staff and so the 59 existing off-street parking spaces at the Property far exceeds the number of spaces actually needed.

58.     At the May 14, 2018 hearing, Township officials and Township residents clearly communicated that they did not want a treatment center at the Property:

    a.      ZHB Chairman McMahon asked Ms. Hill "Why can't you just take care of these patients at your 1288 [Veterans Highway] facility?" (5/14/18 HT p. 57.)

    b.      State legislator Tina Davis testified:

13

5516561v5

I'm concerned for a few reasons why it's being put down here in the lower end. And when I say – I got insulted on Facebook. They said, what does the "lower end" mean? Well, that's where I live. And that's where all of us live.

(5/14/18 HT p. 135.)

c.   Former ZHB Chairman Charles Clayton testified: "And there's plenty of places in Bristol Township where something of their need that they want to put in that they could do." (5/14/18 HT p. 129.)

d.   Resident Tom Barton testified, "[The treatment medical offices] will be better off by Lower Bucks or at some place – or even off of Runway Avenue for that matter." (5/14/18 HT p. 147.)

e.   Resident Sheila Beeman testified, "Bristol Township, real tired of the drug homes and drug facilities. We are done. We want no more. Bristol Township is saturated with them. And in closing, we are saying, I'm sure, no in our backyard." (5/14/18 HT pp. 145-46.)

59.   At the May 14, 2018 hearing, the ZHB's Solicitor Ken Federman voiced skepticism over the Township's claim that Grace Land was not entitled to use only a portion of the Building:

All I want to say is that it's not really about the parking, because theoretically the board can do what the board wants to do, right? The board could say, you're not going to occupy a foot over 4,400 square feet or whatever the number is, 4,200, and the parking would be just fine for that, right?

(5/14/18 H.T. p. 85.)

60.   The Township Special Counsel Kimberley Freimuth adamantly disagreed with the ZHB Solicitor, claiming at one point that if Grace Land wanted only to use a portion of the Building, it should be ordered to tear down the Building. (5/14/18 H.T. at pp. 108 & 85.)

61.   After hearing the Township's and residents' vituperative opposition to Grace Land's Application, the ZHB Chairman insisted that a vote be taken immediately, even overriding the ZHB Solicitor's request that the vote be postponed so that the Township could submit a brief. (5/14/18 HT pp. 151-52.) Without any deliberation, the ZHB members unanimously voted to reject Grace Land's appeal. (5/14/18 HT 162-63.)

14

5516561v5

62.     In its subsequent June 28, 2018 decision, the ZHB acknowledged that the Property is zoned C-Commercial and that "such zoning designation does allow[ ] for an outpatient medical office use pursuant to Section 205-36 and 205-16C(2) of the Zoning Ordinance." Decision Conclusion No. 6, attached as **Exhibit I**.  Nonetheless, the ZHB denied Grace Land's permit, claiming: (a) that the request for a permit somehow constituted a land use development; although the Township had not even made that argument; (b) Grace Land could not satisfy the off-street parking requirements based upon the Township's "assumption" that Grace Land would instead be using the entire Building; and (c) Grace Land was not entitled to occupy only a portion of its own Building.  *See* ZHB Decision at pp. 4-5.

63.     By refusing to grant Grace Land's by-right permit, the Township and ZHB deliberately conspired to prevent Grace Land from operating a medical office intended for the treatment of persons with drug and/or alcohol dependency; although, the ZHB and the Township knew that Grace Land was entitled as a matter of right to operate a medical office at the Property.

## I.      Grace Land's Building Permit Application

64.     In an effort to address the Township's purported issue with parking at the Property, on April 6, 2018, Grace Land applied for a building permit to add parking spaces within the Property's existing impervious surface.

65.     Specifically, Grace Land planned to: (a) remove the canopy that hangs over the Bank teller window and concrete islands and bollards that separate three internal drive through lanes under the canopy and (b) create additional parking spaces for an approximate total of 75 parking spaces.

66.     Since the Bank stopped operating the bank branch at the Property, starting in spring 2018, the canopy over the teller window and drive through lanes are no longer needed.

15

67.     Grace Land thus demonstrated that by making such minor adjustments, it could add approximately 12 parking spaces to satisfy the Township's off-street parking requirements even if the entire Building were to be used a medical office.

68.     The Township denied the building permit, by letter dated May 3, 2018, claiming that "the proposed work constitutes a land development as defined by the Bristol Township Subdivision and Land Development Ordinance (§177-10)."  A copy of T. Scott's 5/3/18 letter is attached as **Exhibit J**.

69.     The Township's denial contravenes Pennsylvania Supreme Court precedent which establishes that development approval is only required when "large-scale development of land" is involved.  *See Upper Southampton Twp. v. Upper Southampton Twp. Zoning Hearing Bd.,* 594 Pa. 58, 66, 934 A.2d 1162, 1167 (2007).

70.     As a matter of law, Grace Land's building permit does not involve large-scale development of land.  Indeed, it does not seek to construct any improvements; to subdivide the Property; to alter the storm water runoff; or to affect outgoing traffic.  In fact, removal of the bank teller canopy will reduce the Building improvements, not increase them, and the new parking will be located within the exact same impervious surface that already exists at the Property.

71.     Thus, as soon as Grace Land offered a remedy to the Township's claim that the medical office use requires additional off-street parking, the Township made sure to deny it for an equally implausible reason.

72.     On May 31, 2018, Grace Land appealed the Township's denial of the building permit to the ZHB.  At the July 9, 2018 hearing held on the appeal, the Township and the residents again strenuously objected to Grace Land's request for a building permit.  Once again, at the

5516561v5

conclusion of the residents' comments, without engaging in any deliberation, the ZHB promptly voted to unanimously reject Grace Land's appeal.

73.     In its subsequent August 22, 2018 written decision, the ZHB adopted wholesale the Township's argument that the building permit purportedly required land development approval. Although the ZHB had not even read the Township's brief prior to rejecting the appeal, the ZHB quoted the Township's brief to support its decision for denying the building permit.  In sum, denying the building permit on the basis that it required land development approval was another pretext to do the Township's bidding and prevent Grace Land from operating a medical office for the treatment of persons disabled by drug and/or alcohol disorders at the Property.

### J.      The Township's Disparate Treatment of Grace Land

74.     The Township's treatment of Grace Land radically diverged from the Township's treatment of the Bank.

75.     As a financial establishment, the Bank was subject to the same off-street parking requirement as applies to medical offices, *i.e.,* one parking space per 150 square feet of gross floor area and one space for each employee on the largest shift.  Zoning Ordinance §205-120(21).  The Bank had operated the Bank branch and corporate headquarters in the Building with approximately 30 employees.  To comply with Section 205-120(21), the Bank was therefore required to have a total of 95 parking spaces ((9,758 divided by 150 = 65) plus 30 employee spaces)).  The Township never required the Bank to increase the currently existing approximate 59 parking spaces to comply with the Township Ordinance.

76.     When the Bank applied to add a one-story addition, which included the bank teller window and the overhanging canopy, all of which measured approximately 6,000 square feet, the

Township approved the Bank's application without ever requiring that the Bank obtain land development approval.

77.     In fall 2017, after the Bank moved its headquarters from the Property to a new location, it continued to operate its bank branch in the 4,407 square foot portion of the Building. The Bank issued a press release about the move of its headquarters and removed the sign at the Property that had announced that its headquarters were located there.  A copy of the press release is attached as **Exhibit K**.

78.     In addition, the Bank submitted to the Township on December 26, 2017, an Application for Resale of Commercial Property which provided that the intended use of the property is "same as current – credit union branch."  A copy of the Bank's Application is attached as **Exhibit L**.  After the sale of the Building to Inspire, the Bank continued to operate the Bank branch in the Building.

79.     Although the Township was notified that the Bank was operating a bank branch in solely a portion of the Building, the Township never notified the Bank that it was violating any Township Ordinances by utilizing solely a portion of the Building.

80.     The Township's and the ZHB's final decisions denying Grace Land's permits were pretextual and designed to conceal their true goal of preventing, obstructing and/or delaying Grace Land's and Daybreak Treatment's efforts to operate a drug and alcohol treatment center at the Property.

81.     Due to Defendants' wrongful acts of discrimination, Grace Land is unable to use its Property for the purpose for which it was purchased and which it has every right to operate in the Property.  The Property currently stands vacant.

5516561v5

82.    Daybreak Treatment's patients have been unable to receive treatment as a result of Defendants' discriminatory acts.

83.    Grace Land and Daybreak Treatment have incurred damages as a result of Defendants' discriminatory actions including, without limitation, lost rents, lost profits, carrying costs, legal expenses and professional consultant expenses and delay damages.

## COUNT I
### Fourteenth Amendment Violations of Due Process and Equal Protection Clauses

84.    Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

85.    This claim is brought in accordance with 42 U.S.C. §1983.

86.    Defendants' actions precluding the establishment or operation of a drug and/or alcohol treatment facility at the Property, while permitting other medical facilities in commercially zoned areas, is discriminatory on its face against persons with disabilities, a discrete and insular minority that faces restrictions and limitations and has been subjected to a history of purposeful unequal treatment.

87.    Defendants' refusal to grant Grace Land a permit to establish and operate a drug and/or alcohol treatment facility is arbitrary, based upon irrational prejudices against, and perceptions of, patients with drug and/or alcohol addictive disorders and is not rationally related to any legitimate government interest.  It therefore violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and has harmed and continues to harm Plaintiffs and the disabled individuals that they serve.

88.    Because of Defendants' discriminatory reaction and behavior, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

89.     Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $1,250,000 per year.

**COUNT II**
**Claims under the Americans with Disabilities Act ("ADA")**

90.     Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

91.     Daybreak Treatment's prospective patients are qualified individuals with disabilities within the meaning of 42 U.S.C. §12101.

92.     The Defendant Township is a qualifying public entity within the meaning of the ADA.  42 U.S.C. §12131(1)(A) (1999).

93.     Section 12132 of the Act constitutes a general prohibition against discrimination on the basis of disability by public entities:

> subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

> 42 U.S.C. §12101(b)(1).

94.     Zoning is an activity covered under Title II of the ADA.  In the preamble to the regulations implementing 42 U.S.C. §12132, the Department of Justice observes that "title II applies to anything a public entity does," 28 C.F.R. pt. 35, app. A at 438 (1998), and in the Technical Assistance Manual compiled to interpret the Act, expressly uses zoning as an example of a public entity's obligation to avoid discrimination.

95.     Defendants' actions violate Title II of the ADA and such actions harmed and continue to harm Plaintiffs and the persons with disabilities Daybreak Treatment serves.

5516561v5

96.     Because of Defendants' discriminatory reaction and behavior, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

97.     Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $1,250,000 per year.

## COUNT III
### Claims under the Rehabilitation Act

98.     Plaintiffs incorporate by reference the foregoing allegations as though fully stated herein.

99.     Congress intended that individuals seeking to overcome their addiction would be protected by the Rehabilitation Act when seeking access to services, benefits, and employment provided by a federally-funded program.   The Rehabilitation Act specifically recognizes as handicapped those individuals with drug-addiction who are "participating in a supervised rehabilitation program and [are] no longer engaging [in the illegal use of drugs]."   29 U.S.C. §706(8)(C)(ii)(II).

100.     Section 504 of the Rehabilitation Act prohibits discrimination against persons with disabilities by any entity that received federal financial assistance:

> no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. §794(a).

101.     Upon information and belief, the Township applies for and receives federal financial assistance.

21

5516561v5

102.    Because the Rehabilitation Act broadly defines "program or activity" to include "all of the operations of" a local government receiving federal financial assistance, 29 U.S.C. §794(b)(1)(A) (1999), zoning, a normal function of a governmental entity, is a covered activity within the meaning of the Act.

103.    Defendants' actions violate Section 504 of the Rehabilitation Act and such actions harmed and continue to harm Plaintiffs and the persons with disabilities Daybreak Treatment serves.

104.    Because of Defendants' discriminatory reaction and behavior, Plaintiffs have expended time and financial resources and have lost the opportunity to conduct their business and provide a much-needed service.

105.    Plaintiffs have suffered economic injury from this violation, including expenses exceeding approximately $75,000 and estimated lost profits of approximately $1,250,000 per year.

## V.    **REQUESTED RELIEF**

Plaintiffs request that this Court award them the following relief:

1.    Find and declare the Defendants' actions and inactions in failing to issue the occupancy and operation permits for a treatment center at 2104 Bath Road, Bristol, Pennsylvania, violate the U.S. Constitution and 42 U.S.C. §1983, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

2.    Find and declare the Defendants' actions and inactions in failing to issue the building permit to increase parking at 2104 Bath Road, Bristol, Pennsylvania, violate the U.S. Constitution and 42 U.S.C. §1983, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

5516561v5

3.      Issue a permanent injunction enjoining Defendants from continuing to violate the U.S. Constitution, Title II of the American with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

4.      Issue an injunction requiring Defendants, promptly and without delay, to issue Grace Land an occupancy and operation permit for a drug and alcohol treatment facility at 2104 Bath Rd., Bristol, Pennsylvania.

5.      Issue an injunction requiring Defendants, promptly and without delay, to issue Grace Land a building permit to increase the parking spaces at 2104 Bath Rd., Bristol, Pennsylvania.

6.      Award Plaintiffs damages for the harm they experienced as a result of Defendants' discriminatory acts and practices.

7.      Award Plaintiffs their reasonable attorney fees and costs.

8.      Award such relief as this Court may deem appropriate.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, PC

_____

PAMELA M. TOBIN, ESQUIRE
Attorneys for Plaintiffs
Grace Land II, LLC and New Freedom Behavioral Health,
LLC, d/b/a Daybreak Treatment Solutions

Dated: 12/14/18

**EXHIBIT A**



# EXHIBIT B

# Ᏸucks County Courier Times

# Bristol Township School District has new $1.75 million offer for four closed elementary schools

**By Chris English**
Posted Oct 28, 2017 at 12:50 AM
Updated Oct 28, 2017 at 12:50 AM

The letter of intent from Progressive Living Units & Systems of Pennsylvania offers a total of $1.75 million for the closed John Fitch, Lafayette, Abraham Lincoln and George Washington elementary schools.

The Bristol Township School District has received a new offer totaling $1.75 million for four of its closed elementary schools.

In a letter of intent obtained by this news organization, Progressive Living Units and Systems of Pennsylvania (PLUS) made the offer for the 17.5-acre John Fitch property on Greenbrook Drive; the 20.9-acre Lafayette property on Fayette Drive; the 9.9-acre Abraham Lincoln property on Plumtree Place and the 17.6-acre George Washington property on Crabtree Drive.

PLUS' letter said it plans to develop the properties "for age restricted housing or for uses related to the business of providing behavioral health services, both residential and non-residential, and including, without limitation, services to veterans, persons suffering from traumatic brain injuries and other handicapped persons as defined in the Fair Housing Act."

The offer from PLUS is $800,000 more than previous offers totaling $950,000 for the John Fitch, Lafayette, Lincoln and Maple Shade properties.

District Business Manager Joshua Sweigard confirmed the district had received the letter from PLUS, and said it is the first offer the district has received for Washington.

He declined to comment further, saying the school board will consider the offer soon.

"We want to find projects suitable for all these properties," Sweigard said.

This news organization was unsuccessful in attempts to reach officials from PLUS for comment. There was no phone number or email address for the firm included in its letter of intent.

An office at the address listed on the firm's letterhead — 1288 Veterans Highway in Middletown — had signs for two businesses: Chapman Agency, Inc., a real estate firm, and DayBreak Treatment Solutions. The Chapman part of the building appeared to be vacant and the door was locked. An employee at DayBreak described the business as a drug and alcohol rehabilitation center, and declined to comment on whether that business had any connection to PLUS.

But there appears to be a connection. On Jan. 10, the Falls zoning hearing board reviewed a request from Progressive Living Units and Systems, of 1288 Veterans Highway in Middletown, for a zoning variance that would have allowed the business to build a recovery home on Hillside Lane.

Meeting minutes indicate Stacy Hill, identified as vice president of operations for DayBreak Treatment Solutions, testified that "PLUS has provided group homes for approximately 30 years." DayBreak's website describes the company as offering detox and rehabilitation services for alcohol and substance abuse.

PLUS' letter to Bristol Township School District asks the school district to provide documentation on each of the four school sites and opportunities to visit and inspect each. If the due diligence goes smoothly, the letter proposes the two parties eventually enter into an agreement of sale for the properties and proceed to settlement.

The letter does not make individual offers for the four properties and doesn't mention whether PLUS would be willing to buy fewer than all four of them.

The school district has been negotiating sale agreements with two other firms for three of the school sites and the Maple Shade property on Prospect Avenue.

Revonah Construction has offered a total of $770,000 — $210,000 for Fitch, $350,000 for Lafayette and $210,000 for Lincoln. Interfaith Housing Visions has offered $180,000 for the Maple Shade property on Prospect Avenue. Each company proposed to build age-restricted housing on the school sites.

Residents who attended a recent school board meeting complained about the low offers for the schools. Sweigard has said some of the reasons the offers aren't as high as hoped for are the schools are all located within neighborhoods and not along main roads, the uses are being restricted and the developers are taking on the expense of demolishing the schools.

Solicitor David Truelove challenged the unhappy residents to submit better proposals; he said the negotiations with Revonah and Interfaith are not complete.

# EXHIBIT C



# BRISTOL TOWNSHIP

## DEPARTMENT OF BUILDING, PLANNING AND ZONING

2501 Bath Road · Bristol, PA 19007 · (215) 785-3680 · Fax (215) 788-8541

**Certified Mail & Regular 1st Class Mail**

December 28, 2017

Grace Land II, LLC
1288 Veterans Highway
Levittown, PA 19056

<u>RE: 2104 Bath Road, Bristol, PA 19007; Application by Daybreak Treatment Solutions / Grace Land II, LLC for Medical Office "Outpatient treatment of persons with alcohol and drug addiction disorders"</u>

Dear Sir/Madam:

This is in response to the zoning determination application cited above.

The Zoning Ordinance identifies Medical Office as "Office or clinic for medical, psychological or dental examination or treatment of persons as outpatients, including laboratories incidental thereto and chiropractic services, physical therapy, or massage therapy by massage therapists with certifications from the National Certification Board for Therapeutic Massage and Bodywork or other recognized national certification board approved by Council."

On September 12, 2017, Grace Land II, LLC, on behalf of Daybreak Treatment Solutions, submitted a Zoning Determination Application for this same property indicating an intended use as a Group Home. It was determined that the September 12, 2017 application and the intended use described therein did not meet the requirements for a Group Home under the Township Zoning Ordinance.

This most recent Zoning Determination Application, dated December 6, 2017, was also filed by Grace Land II, LLC, on behalf of Daybreak Treatment Solutions, but this application seeks a Medical Office Use at this property. Given that this application is for the same property and same applicant as the September 12, 2017, I would like to understand the difference in proposed uses and, specifically, the change from inpatient to outpatient facilities. As such, I will require additional information in order to process this request for zoning determination.

1

Before making a determination I will need information on the licensing of the practitioners involved, as well as information on the certification of the <u>outpatient</u> treatment methods by a board or agency authorized by statute to issue such certification.  Kindly also provide the proposed hours of operation for the proposed use.  Also confirm that there will be no overnight stays associated with the use.

In addition, the Zoning Ordinance identifies a specific off-street parking requirement for the Medical Office use. Specifically, "[o]ne off-street parking space for every 150 square feet of gross floor area, plus one space for every doctor and full-time employee".  The December 6, 2017 Zoning Determination Application did not include any information on the off-street parking in text or plan form.

Based upon the above, I do not have enough information from the applicant at this time to make a determination on the medical office / treatment of outpatients with alcohol and drug addiction disorders.  Therefore, I am unable to issue a zoning determination at this time.  Kindly provide the above-requested information and I will again review the request and respond to the Application.

Sincerely,

Tom Scott, AICP
Building and Planning Director

CC: Pamela Tobin
    Kaplin Stewart Meloof Reiter & Stein, LLC
    Union Meeting Corporate Center
    910 Harvest Drive, PO Box 3037
    Blue Bell, PA 19422-0765

(11) B10 Cemetery. A burial place or graveyard including mausoleum, crematory or columbarium.

   (a) Minimum lot area: 10 acres.

   (b) No more than 10% of the lot area, to a maximum of five acres, may be devoted to aboveground buildings not serving as burial markers or memorials, such as business and administrative offices, chapels, maintenance facilities and the like. This restriction includes parking facilities.

   (c) No building or structure shall be located within 50 feet of a property line or street line.

   (d) One single-family detached dwelling for a full-time caretaker shall be permitted.

(12) B11 Municipal Services. All municipal buildings, structures and uses including, but not limited to, recreational facilities, playgrounds, parks, governmental offices, garages for the storage of tools, equipment and vehicles, municipally sponsored police and emergency services, and the use of land for the stockpiling of materials used by the municipality in its municipal functions.

(13) B12 Public Park/Public Recreational Facility. Outdoor recreational facility, nature area, playground or park, owned or operated by the local, county, state, or federal government.

C. Office uses.

(1) C1 Office. A room or group of rooms used for conducting the affairs of a business, profession, or service other than Uses B11, C2, and D14.

(2) C2 Medical Office. Office or clinic for medical, psychological or dental examination or treatment of persons as outpatients, including laboratories incidental thereto and chiropractic services, physical therapy, or massage therapy by massage therapists with certification from the National Certification Board for Therapeutic Massage and Bodywork or other recognized national certification board approved by Council.

(3) C3 Office Park. An office park is a planned development of office and related uses which includes improvements for internal streets, coordinated utilities, landscaping and buffering.

   (a) Area and dimensional requirements.

      [1] Minimum site area: 10 acres.

      [2] Minimum frontage at street line - site: 150 feet.

      [3] Minimum setback from street lines - site: 100 feet.

      [4] Minimum setback from property lines - site: 75 feet.

      [5] Minimum setback - internal streets: 25 feet.

# EXHIBIT D



**Kaplin|Stewart**
Attorneys at Law

Pamela M. Tobin
Direct Dial: (610) 941-2543
Direct Fax: (610) 684-2041
Email: ptobin@kaplaw.com
www.kaplaw.com

February 2, 2018

**VIA EMAIL AND FIRST CLASS MAIL**

Tom Scott
Building and Planning Director
Township of Bristol
2501 Bath Road
Bristol PA 19007-2150

**RE:**   **2104 Bath Road, Bristol PA 19007**

Dear Mr. Scott:

On behalf of my client, the applicant Grace Land II, LLC ("Grace Land"), I hereby respond to the questions you posed in your December 28, 2017 letter regarding Grace Land's application for Daybreak Treatment Solutions ("Daybreak") to operate a medical office for outpatient treatment of persons with alcohol and drug addiction disorders at the above address ("Medical Office").

As you should be aware, we reached an agreement with the Zoning Hearing Board to hold in abeyance Grace Land's challenge to the Township's prior denial of the application to operate a detoxification facility at the property.  Therefore, that application is not currently before you. Instead, as you are aware, Grace Land's current application is exclusively to operate a Medical Office.  Each of your questions is responded to in the order in which they were raised in your letter.

**A.  Licensing**

You state in your letter: "Before making a determination I will need information on the licensing of the practitioners involved, as well as information on the certification of the outpatient treatment methods by a board or agency authorized by statute to issue such certification."  The Zoning Ordinance pertaining to Medical Offices which you quoted in your letter and is quoted in the margin,[1] solely requires such information as it pertains to massage therapists.  The

---

[1] The Zoning Ordinance provides:
    C2 Medical Office.  Office or clinic for medical, psychological or dental examination or treatment of persons as outpatients, including laboratories incidental thereto and chiropractic services, physical

Kaplin Stewart Meloff Reiter & Stein, PC
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA 19422-0765
610-260-6000 tel

Offices in
Pennsylvania
New Jersey
5111990v1

Tom Scott
February 2, 2018
Page 2

Township is not authorized, therefore, to condition its zoning determination on Daybreak's state licensing requirements.

Furthermore, as we explained in Grace Land's challenge to the prior determination, Daybreak is not able to secure a license to operate the Medical Offices until it has been issued a zoning permit to operate the Medical Office at the property. Therefore, Daybreak cannot provide any such license until the zoning permit is actually issued. In an attempt to address your question, once we secure the necessary permit from the Township, Daybreak intends to apply for a license from the Pennsylvania Department of Drug and Alcohol Programs to conduct an outpatient facility at the property. Thus, Daybreak will have to satisfy the Department's rigorous licensing requirements before it can operate the Medical Office at the property.

**B.  Hours of Operation**

As requested, we hereby confirm that the building shall be used exclusively for treatment of persons as outpatients with no overnight stays associated with the use.

Although the Zoning Ordinance does not require an operator of a Medical Office to identify the hours of operation, again in the spirit of cooperation, Daybreak anticipates that it will operate Monday through Friday, 8:00 am to 9:00 pm and Saturday, 8:00 am to 4:00 pm.

**C.  Off-Street Parking**

Under the ordinance, the Township requires (1) one space for each 150 square feet of use and (2) one space per doctor and full-time employee. Zoning Ordinance § 205-120(17).[2]

As depicted on the enclosed floor plan, Daybreak intends to operate the Medical Office in approximately 4,407 square feet of space in the building. Daybreak anticipates operating the Medical Office with seven full-time employees and a doctor.

Accordingly, under § 205-120(17), Daybreak will require a total of 37 parking spaces (29 + 8). The property's parking field contains approximately sixty parking spaces. Therefore, Daybreak has ample off-street parking to satisfy the Township's off-street parking requirements pertaining to operation of a Medical Office.

---

therapy, or massage therapy by massage therapists with certification from the National Certification Board for Therapeutic Massage and Bodywork or other recognized national certification board approved by Council.
Zoning Ordinance § 205-16(C)(2).

[2] The Zoning Ordinance provides:
Use C2 Medical Office: one off-street parking space for every one 150 square feet of gross floor area, plus one space for every doctor and full-time employee.
Zoning Ordinance § 205-120(17).

Tom Scott
February 2, 2018
Page 3

### D.  Conclusion

As we have answered all of your questions, we trust that the Township will issue the requested zoning determination in the very near future.  If, however, you have any further questions, we suggest that we meet to discuss them at your earliest convenience.

Thank you for your time and consideration of this application.


Very truly yours,


Pamela M. Tobin

PMT:pjh
Enclosure



EXISTING FLOOR PLAN

2104 BATH ROAD, BRISTOL TOWNSHIP, PA 19007

4,407 SF

# EXHIBIT E



Pamela M. Tobin
Direct Dial: (610) 941-2543
Direct Fax: (610) 684-2041
Email: ptobin@kaplaw.com
www.kaplaw.com

February 23, 2018

**VIA E-MAIL AND FEDERAL EXPRESS**

Tom Scott
Building and Planning Director
Township of Bristol
2501 Bath Road
Bristol PA 19007-2150

**RE:**    **In re:  Grace Land II, LLC Zoning Determination Application**

Dear Mr. Scott:

This will follow up on Grace Land's December 6, 2017 application to operate outpatient medical offices at the property located at 2104 Bath Road in Bristol Township.  As the property is zoned commercial, this use is by-right under the zoning ordinance and the permit therefore should have been issued.

By letter emailed and mailed to you on February 2, 2018, we fully responded to the questions that you posed in your December 28, 2017 letter regarding the application.  In our letter, we requested that the permit be granted without further delay, explaining that the operator, Daybreak Treatment Solutions, cannot obtain the necessary licensure from the Pennsylvania Department of Drug and Alcohol Programs to conduct an outpatient treatment facility at the property until the Township issues the requested permit.  Hence, by delaying issuance of the permit, the Township is preventing Daybreak from obtaining the necessary licensure.

I understand that the fire marshal recently conducted an inspection of the property, albeit unannounced, confirming that the property passed inspection.  Given that clearance, our earlier response to your questions, and the by-right use of the property for outpatient treatment services, the Township has no justification to further delay approval of Grace Land's application.

As we offered many times before, we are willing to meet to discuss any further questions that you might have as long as the meeting is promptly scheduled.  At a minimum, we request that you call to discuss the status of the application including any hold up that exists.

Kaplin Stewart Meloff Reiter & Stein, PC
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA 19422-0765
610 260 6000 tel

*Offices in*
Pennsylvania
New Jersey
5192083v1

Tom Scott
February 23, 2018
Page 2

I look forward to hearing from you.

Very truly yours,

Pamela M. Tobin

PMT:pjh

# EXHIBIT F



# BRISTOL TOWNSHIP

## DEPARTMENT OF BUILDING, PLANNING AND ZONING

2501 Bath Road · Bristol, PA 19007 · (215) 785-3680 · Fax (215) 788-8541

February 28, 2018

**Certified Mail & Regular 1ˢᵗ Class Mail**
Pamela M. Tobin
Kaplin Stewart Meloff Reiter & Stein, PC
Union Meeting Corporate Center
910 Harvest Drive, PO Box 3037
Blue Bell, PA 19422-0765

RE:   2104 Bath Road, Bristol, PA 19007; Application by Daybreak Treatment Solutions /
Grace Land II, LLC for Medical Office "Outpatient treatment of persons with alcohol and
drug addiction disorders"

Dear Ms. Tobin:

This is in response to your letter of February 2, 2018, as to the above-referenced application.

In your letter, you state that the proposed medical office for outpatient treatment will not be able
to acquire a license to operate the medical office until Bristol Township issues a zoning permit.
However, in your letter, you confirm that the proposed medical office will have "…seven full
time employees and a doctor."   Please provide the licensing information for the doctor(s)
proposed to be on staff at the facility, as the medical office use will involve licensed
practitioners.

Your letter also states the applicant will operate a medical office in 4,407 sf of the building;
however, the building has a floor area of 10,524 sf.  Please advise as to the proposed use for the
remainder of the building, as that will factor into whether there is sufficient parking on site to
accommodate both the medical office use and the proposed use for the remainder of the building.

Based upon the above, we do not have enough information to make an informed zoning decision
on the application.

Please forward the needed licensing, use and parking information to the Township.

Thank you for your attention to this important matter.

1

Sincerely,

Tom Scott, AICP
Building and Planning Director


CC: Twp Manager
    Twp Solicitor
    File

# EXHIBIT G



**Kaplin | Stewart**
*Attorneys at Law*

Pamela M. Tobin
Direct Dial: (610) 941-2543
Direct Fax: (610) 684-2041
Email: ptobin@kaplaw.com
www.kaplaw.com

March 2, 2018

**VIA EMAIL AND FEDERAL EXPRESS**

Tom Scott
Director of Building, Planning and Zoning
Township of Bristol
2501 Bath Road
Bristol PA 19007-2150

RE:    **2104 Bath Road, Bristol PA 19007; Application by Daybreak Treatment Solutions/Grace Land II, LLC for Medical Office "Outpatient treatment of <u>persons with alcohol and drug addiction disorders"</u>**

Dear Mr. Scott:

This will respond to your February 28, 2018 letter requesting additional information regarding the above December 6, 2017 application to use the property located at 2104 Bath Road in Bristol Township as out-patient medical offices.

As you know, our application has been pending before the Township for over two months. Although the Township does not dispute that this property is zoned commercial and that out-patient medical offices is a by right use, the Township has declined to grant the December 6, 2017 application, requesting each time new information on a piecemeal basis.

This time you asked us to supply: (1) the license for the physician who will work at the medical offices and (2) the plan for using the space in the building not occupied by out-patient medical offices.  Although neither request is critical for determining the application, below is our response in the hopes of obtaining a determination without further delay.

First, regarding your request for the physician's license, again the Zoning Ordinance pertaining to Medical Offices (again quoted in the margin,[1]) solely requires such information as it pertains

---

[1] The Zoning Ordinance provides:
    C2 Medical Office.  Office or clinic for medical, psychological or dental examination or treatment of persons as outpatients, including laboratories incidental thereto and chiropractic services, physical therapy, or massage therapy by massage therapists with certification from the National Certification Board for Therapeutic Massage and Bodywork or other recognized national certification board approved by Council.

Kaplin Stewart Meloff Reiter & Stein, PC
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA  19422-0765
610-260-6000 tel

*Offices in*
Pennsylvania
New Jersey
5207216v1

Tom Scott
March 2, 2018
Page 2

to massage therapists. The Township is not authorized, therefore, to condition its zoning determination on state licensing requirements, as we pointed out in our earlier letter. Nonetheless, in an effort to obtain a determination without further delay, enclosed is a copy of Dr. Chaefsky's license issued by the Pennsylvania Bureau of Professional and Occupational Affairs.

Regarding your second request, my client does not currently have plans to use the remaining space in the building not intended for medical offices per the submitted floor plan. Accordingly, we submitted a floor plan showing the space that we intend to use solely for medical offices and we did not submit an application to use the property for any other purpose. If and when my client decides to use the remaining space in the building, we will take the necessary steps to obtain approval as required under the Zoning Ordinance.

I trust that the above fully responds to your two latest questions regarding the December 6, 2017 application for zoning determination.

Based on the limited nature of these latest requests, I understand that the Township agrees that our application to use the building for out-patient medical offices satisfies the Township's parking and other zoning requirements. We respectfully request therefore that the Township issue its determination within the next fourteen days, *i.e.,* by March 14, 2018.

If we do not receive the Township's determination by that deadline, we reserve all rights to take the necessary actions to obtain our client's rightful zoning determination.

In the interim, I am available if you or your counsel have any further questions.

Very truly yours,

Pamela M. Tobin

PMT:pjh
Enclosure

cc:   Kimberly A. Freimuth, Esquire (w/Enclosure, via Email and First Class Mail)

Zoning Ordinance § 205-16(C)(2).

DISPLAY THIS CERTIFICATE PROMINENTLY • NOTIFY AGENCY WITHIN 10 DAYS OF ANY CHANGE

**Commonwealth of Pennsylvania**
**Department of State**
**Bureau of Professional and Occupational Affairs**
PO Box 2649 Harrisburg PA 17105-2649

17  0060121

License Type

Medical Physician and Surgeon

License Status

Active

ROBERT LOUIS CHAEFSKY
704 RAMBLER ROAD
ELKINS PARK PA  19027

License Number

MD009568E

Initial License Date

07/10/1997

Expiration Date

12/31/2018

Commissioner of Professional and Occupational Affairs

# EXHIBIT H



# BRISTOL TOWNSHIP

## DEPARTMENT OF BUILDING, PLANNING AND ZONING

2501 Bath Road · Bristol, PA 19007 · (215) 785-3680 · Fax (215) 788-8541

April 10, 2018

**Certified Mail & Regular 1ˢᵗ Class Mail**
Pamela M. Tobin
Kaplin Stewart Meloff Reiter & Stein, PC
Union Meeting Corporate Center
910 Harvest Drive, PO Box 3037
Blue Bell, PA 19422-0765

RE:   2104 Bath Road, Bristol, PA 19007; Application by Daybreak Treatment Solutions / Grace Land II, LLC for Medical Office "Outpatient treatment of persons with alcohol and drug addiction disorders"

Dear Ms. Tobin:

This concerns the above referenced matter.

You stated in your letter of 3/2/18 that the applicant will operate a medical office in 4,407 sf of the building located at the above property; but that there are no plans currently for the use of the remainder of the building. Based upon available public records, the total building has a floor area of 10,524 sf. No zoning approval has been issued by Bristol Township authorizing a split or separate use of a portion of a building which has not previously been allocated for separate uses. As a result, the Township has assumed for purposes of this determination that the entire building is proposed to be utilized for medical offices.

The off-street parking information you submitted addresses only the 4,407 sf of the building and does not address parking for the rest of the building. By our calculations for off-street parking, as required by the Zoning Ordinance for a medical office use, the 57 existing off-street parking spaces are not sufficient to meet the required standard for a medical office use for the entire building.

"One off-street parking space for every 150 square feet of gross floor area, plus one space for every doctor and full time employee."; (§205-120 (17) of the zoning ordinance). The 10,524 sf

building would require 71 spaces, plus one space for each doctor or other full-time employee proposed as part of the medical office use. Using the 8 full-time employees noted in your letter of 2/2/18, the medical office use at the property would require a total of 79 off-street parking spaces.

Based upon the above, the zoning application for medical offices for outpatient treatment of persons with alcohol and drug addiction disorders at the above-referenced property is denied.

Thank you for your attention to this important matter.

Sincerely,

Tom Scott, AICP
Building and Planning Director


CC: Twp Manager
    Twp Solicitor
    File

# EXHIBIT I



# BRISTOL TOWNSHIP
## Zoning Hearing Board

2501 Bath Road · Bristol, PA 19007 · (215) 785-3680 · Fax (215) 788-8541

June 28, 2018

**Via First Class Mail & Email**

Ptobin@kaplaw.com
Pamela M. Tobin, Esquire
Kaplin Stewart Meloff Reiter & Stein P.C.
Union Meeting Corporate Center
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA 19422

Kfreimuth@foxrothschild.com
Kimberly Freimuth, Partner
Fox Rothschild LLP
Stone Manor Corporate Center
2700 Kelly Road, Suite 300
Warrington, PA 18976

RE:   **Grace Land II, LLC – 2104 Bath Road, Bristol PA 19007**
      **Appeal 181159 (formally 180667)**
      **May 14, 2018 Bristol Township Zoning Hearing**

Dear Ms. Tobin and Ms. Freimuth:

Pursuant to my correspondence to you dated May 15, 2018 regarding the above captioned matter please find enclosed the Opinion of the Bristol Township Zoning Board Hearing Board.

Respectfully,

KENNETH D. FEDERMAN, ESQ.
Bristol Township Solicitor

KDF/mmv
Enclosure
Cc:  Tom Scott, Director of Building, Planning and Zoning

BEFORE THE ZONING HEARING BOARD OF BRISTOL TOWNSHIP

IN RE: GRACE LAND II, LLC
TAX PARCEL NO. 05-029-092

SUBJECT PROPERTY- 2104 Bath Road, Bristol PA 19007

APPLICATION NO. 180667 (filed on or about March 16, 2018) and
181159 (filed on or about April 30, 2018).

Appeal for a Zoning Determination from the decision of the Bristol Township
Zoning Officer.

## FINDINGS OF FACT AND CONCLUSIONS IN SUPPORT OF THE DECISION OF THE BRISTOL TOWNSHIP ZONING HEARING BOARD

I.    Procedural History

The Applicant is GRACE LAND II, LLC ("Applicant") the Owner of Record of the property subject to this application located at 2104 Bath Road, Bristol PA, 19007 and further identified as Tax Parcel No. 05-029-092.

By way of background, the property was previously owned by a related party to the Applicant Inspire Federal Credit Union ("Inspire"). The property was originally zoned as R-1 residential and as a result of enactment of Ordinance 2016-02 the tax parcel was reclassified from what was its current R-1 residential use to C-Commercial. Subsequent to the re-zoning of the property, it was then purchased by the Applicant. While the agreement of sale between Inspire and the Applicant was executory the Applicant filed a the original Zoning Determination Application ("ZDA") dated September 12, 2017. The original ZDA and was denied by Building and Planning Director of Bristol Township ("Zoning Officer") for reasons cited in his October 11, 2017. The Zoning Officer determined that the Bristol Township Zoning Ordinance 2016-3, as amended, set forth the parameters for a "Group Home" use.  It is clear the Zoning Officer construed the application as being one which required meeting the requirements of Ordinance 2016-3. The Zoning Officer's denial of the ZDA resulted in the filing of Appeal No. 172970 to the Bristol Township Zoning Hearing Board ("ZHB") dated October 24, 2017. The basis for the Appeal to the ZHB was a substantive validity challenge to seek permission to operate a detoxification center at the property.  For reasons unrelated to the substance of the present Appeal, a request for a continuance was made by the Applicant and that request was denied.  However, in an effort to work out the matter amicably, the ZHB agreed to hold Appeal No. 172970 in abeyance so that the Applicant could ultimately have a hearing on the Appeal to operate a detoxification center.   In the initial application, it was contemplated that the Applicant would utilize the entire building consisting of 10,524 square feet for its detoxification center.  Appeal No. 172970, which

as mentioned above is being held in abeyance is presently scheduled to be heard by the ZHB in it hearings scheduled for July 2018.

While Appeal No. 172970 was being held in abeyance, the Applicant filed a different ZDA dated December 6, 2017, requesting a determination for only a partial use of the building, utilizing only 4407 square feet for medical offices. This ZDA resulted in two (2) Appeals to the ZHB: Appeal application No. 180667, that was filed on or about March 16, 2018, the other was Appeal No. 181159, filed on or about April 30, 2018. Initially, in Appeal No. 180667, the Applicant took the position that the ZDA dated December 6, 2017, requesting the partial use of the building for outpatient medical offices had been deemed to be denied since the Applicant made a determination that the Zoning Officer was deliberately delaying a decision by making inquiries that were, in the Applicant's opinion, superfluous to the ZDA. As a result of additional communications between the Zoning Officer and the Applicant's counsel, which included providing answers to the Zoning Officer's inquiries, the Zoning Officer in a letter dated April 10, 2018, issued a denial of the ZDA dated December 6, 2017, request for the outpatient medical offices. The first Appeal No. 180667, for the partial use of the building was essentially deemed moot since the Zoning Officer issued a denial of the December 6, 2017, ZDA and therefore the denial was actual not a "deemed denial". The second Appeal No. 181159 was heard on May 14, 2018, at which point the ZHB denied the Appeal. This opinion does not address the Appeal No. 172970 to the ZHB dated October 24, 2017. The original appeal No. 172970 to the ZHB was on the basis of a substantive validity challenge to seek permission to operate a detoxification center at the property with overnight stays. The May 14, 2018 hearing solely addressed the issues raised with respect to the denial of the ZDA for use of partial for a portion of the building for outpatient medical offices.

Following the appropriate proof of notice to adjoining property owners of the hearing, the hearing was held on May 14, 2018, before the Bristol Township Zoning Hearing Board. The Applicant provided proof of notice to all required property owners. Following the presentation of evidence by the Applicant, the Applicant was questioned by the Board. Numerous members of the public also provided testimony and they were uniformly against the granting of the Appeal in favor of the Applicant. At the closing of the hearing, a motion to deny the Appeal was proposed and voted upon by the ZBA in a vote of three (3) to none (0).

II.    Findings of Fact

The Zoning Hearing Board of Bristol Township makes the following Findings of Fact and relies upon the same in rendering its decision:

1.  The Applicant is GRACE LAND II, LLC the Owner of Record of the property subject to this application located at 2401 Bath Road, Bristol PA 19007 tax map parcel # 05-029-092.

2.  The subject property is zoned C-Commercial.

3. The Applicant presented evidence that it provided proof of notice to the adjoining property owners.

4. The property encompasses approximately 1.7 +/- acres in Bristol Township.

5. The property includes one (1) un-subdivided building which is approximately 10,524 square feet.

6. The Applicant has applied to divide the use of the property by segregating approximately 4,407 SF of the building for the use as outpatient medical offices use.

7. The hearing transcript consisting of testimony from page 27 of the hearing transcript to page 163 is hereby incorporated by reference.

8. The Applicant presented its binder consisting of 11 tabs as provided for in the Applicant's index in the front of the binder ("Applicants Evidence Binder").

9. Following the close of the Applicant's evidence the public was given an opportunity to speak for or against the Application.

10. There was strong objection to the application by the pubic as is evidenced in the record of the hearing transcript.

11. The objections raised by the public concerned the type of medical activity that would ensue on the property if the Appeal were granted and the location of the facility in the Township.

12. The Applicant failed to address the use of the remaining 6,117 square feet ((i.e. 10,524-(4,407) = 6,117)) in the building.

13. Applicant through its Appeal is seeking to separate the minority portion of the building for outpatient medical office use.

14. The Applicant would not disclose their intended use for the balance of the square footage in the building to the Zoning Officer or the ZHB.

15. The Applicant's testimony that the Applicant had no present intended use for the remaining space in the building is not credible given the testimony of its witnesses and its pending Appeal No 172970 on the substantive validity challenge and other testimony adduced at the hearing. (For example see hearing transcript for testimony of Stacy Hill - Vice President, in charge of operations pages 37,45, 59-60).

16. The Zoning Officer could not determine what the balance of the space would be used for and therefore could not determine whether or not there would be sufficient parking spaces to accommodate occupancy of the rest of the building.

17. The Applicant provided testimony on the activity that would occur on the property and that such use would not involve overnight stays and would operate as an outpatient medical facility.

18. Neither the Appeal No. 180667 or 181159 list the zoning classification in paragraph 13 of either Appeal to the ZBA.

III.  Conclusions

1. The Applicant presented evidence that it provided proof of notice to the adjoining property owners and such notice was found to meet the requirements of the notice of Section 205-189 A. of the Zoning Ordinance which address the notice requirements of the ZHB.

2. The Applicant's basis for the Appeal is Section 205-188 of the Zoning Ordinance which addresses Appeals from decision of Zoning Officer.

3. The Applicant's Appeal is not based on Section 205-190 of the Zoning Ordinance which addresses Challenges to Validity.

4. The hearing transcript consisting of testimony from page 27 of the hearing transcript to page 163 is hereby incorporated by reference and entered into evidence and has been given its due evidentiary weight.

5. The Applicant's Evidence Binder is accepted into evidence and has been given its due evidentiary weight.

6. The property is zoned C-Commercial with such zoning designation does allows for an outpatient medical office use pursuant to Section 205-36 and 205-16C(2) of the Zoning Ordinance.

7. The Zoning Officer rightfully denied the ZDA which because in substance the application constituted a request for a Land Development pursuant to Section 177-10 A and therefore requires the approval of Township Council pursuant to Section 205-170 B dealing with the powers of a Zoning Officer and Section 177-11 A and B.

8. Following the close of the Applicant's evidence the public was given an opportunity to speak for or against the Application but such testimony had no bearing on the legal issues involved in the Appeal.

9. The Zoning Officer could not determine what the balance of the space would be used for and therefore could not determine whether or not there would be

sufficient parking spaces to accommodate occupancy of the rest of the building pursuant to 205-120A-17 of the Zoning Ordinance which requires one off-street parking space for every 150 square feet and thus the parking as currently configured would be 19 spaces short for the entire building if the building were used for medical offices.

10. The Appeal (both 180667 and 181159) were technically defective in as much as neither Appeal set for the zoning classification in paragraph 13 of the Appeal to the ZBA form and therefore did not satisfy the requirements of Section 25-188 I.

11. The ZBA has concluded that the Applicant has not met its burden to be granted the right to separate the building into two (2) demised spaces notwithstanding the proposed use is allowed of right.

12. The Applicant requested no other relief and none was granted.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY BLANK**

Date: June 27, 2018

BY THE BOARD:

Chairman — James McMahon

Vice Chairman   Mark DeMarchis

Secretary

Member   Sue Lewis

Member

6

# EXHIBIT J



# BRISTOL TOWNSHIP

## DEPARTMENT OF BUILDING, PLANNING AND ZONING

2501 Bath Road · Bristol, PA 19007 · (215) 785-3680 · Fax (215) 788-8541

May 3, 2018

**Certified Mail & Regular 1st Class Mail**
Vince Marucci
Form Space Design Architecture
715 North New Street
Bethlehem, PA 18018

RE:   2104 Bath Road, Bristol, PA 19007; Application by Daybreak Treatment Solutions / Grace Land II, LLC for Medical Office "Outpatient treatment of persons with alcohol and drug addiction disorders"

Dear Mr. Marucci:

This concerns the above referenced matter.

On April 10, 2018 we received a zoning determination application with a building permit application and a check for $50, in connection with the above referenced property. The application materials state, in part "Modify existing painted parking lot striping for additional parking spaces."

The zoning determination is for the use referenced above.

As you may know, a separate entity representing Daybreak Treatment Solutions / Grace Land II has submitted the exact same zoning determination application. That application has been denied and is now on appeal to the zoning hearing board.

1

Your building permit application cannot be approved as the proposed work constitutes land development as defined by the Bristol Township Subdivision and Land Development Ordinance (§ 177-10)[1]

As a result the application materials you filed are being returned with this letter.

Thank you for your attention to this important matter.

Sincerely,

Tom Scott, AICP
Building and Planning Director

CC: Twp Manager
    Twp Solicitor
    File

---

[1] LAND DEVELOPMENT — Any of the following activities:
A. The improvement of one or more contiguous lots, tracts, or parcels of land for any purpose involving a group of two or more residential or nonresidential buildings, whether proposed initially or cumulatively, or a single nonresidential building on a lot or lots regardless of the number of occupants or tenure; or the division or allocation of land or space, whether initially or cumulatively, between or among two or more existing or prospective occupants by means of, or for the purpose of streets, common areas, leaseholds, condominiums, building groups or other features.
B. A subdivision of land.

# EXHIBIT K

5/12/2018    Inspire Federal Credit Union Celebrates Opening of New Headquarters - LevittownNow.com



LEVITTOWN
Now.com
THE LATEST NEWS FROM THE LEVITTOWN, PA. AREA.

HOME    🖾 ADVERTISE    👤 JOBS    ✱ SEECLICKFIX    ☞ SUPPORT LOCAL JOURNALISM
🔵 ABOUT/CONTACT US





# Inspire Federal Credit Union Celebrates Opening of New Headquarters

Sponsored Post    August 31, 2017

Tweet    Like 23    Share    G+    • Shr    Save

### Sponsored Post

Inspire Federal Credit Union has completed the renovation of its new corporate headquarters. The 20,000-square foot building, which was purchased in January, 2017, has been overhauled to create a state-of-the-art facility for the fast-growing credit union.

The three-story building, which is located at 3 Friends Lane, Newtown, PA (corner of Friends Lane and Yardley-Newtown Road) will house the credit union's executive staff, member relationship center, marketing, training, loan department and all other back office functions. Additionally, part of the first-floor space has been allocated to a new retail branch, providing competitive products and services to Newtown and surrounding markets.



Inspires renovations have turned a building, built in the 1980's into a modern, high-tech and "inspiring" workplace for staff. The building has been renovated with open workspaces for employee collaboration and reinforces Inspires brand through the building using bold and bright colors tied into the corporate logo.

"The interior of our headquarters will create an atmosphere of high energy and motivation, providing our staff a positive work    ronment, said Jim Merrill, President/CEO of Inspire. "We wanted the space to reflect our brand and tie in the culture of the organization we have worked so hard in developing over the past few years."

Additionally, according to Merrill, "Our organization is extremely excited to enter the Newtown market. We believe    service, pricing and strong relationship culture is a great fit for Newtown and we can't wait to get busy earning the banking

1/3

relationships of the individuals and businesses in this market."



"The major catalyst for the move is the fact that Inspire has experienced unprecedented growth under the leadership of Jim Merrill, nearly doubling in size in less than 3 years" said Inspire FCU Board Chairman Chichi Ahia.

"While financial growth has been and continues to be a priority, we are equally committed to and energized by our proliferating role as one of the premier, trusted financial partners in our community," he continued.

Inspire will be holding a ribbon cutting ceremony and community grand opening celebration at the building on 3 Friends Lane September 23, 2017. Ribbon Cutting will be at 9 a.m. followed by building tours and a community celebration from 10 a.m. to 2 p.m. There will be entertainment, special guest appearances from local sports personalities, great food, a gaming truck for kids, additional activities and opportunities to learn more about the relationship focused approach to banking of Inspire FCU. Inspire has partnered with the Barkann Family Healing Hearts Foundation (https://thebarkannfoundation.org) to provide a fun and festive atmosphere. The entire community is invited to attend.

Interior design, space planning, construction management and furnishings were managed by Financial Design Center.

## For more information, please visit www.inspirefcu.org/newtownGO for details about our Grand Opening Community Event.

Credit Union Expands, Relocates Headquarters
January 4, 2017
In "Business"

Inspire Federal Credit Union Opens New Branch & Headquarters With Fanfare
September 26, 2017
In "Business"

Inspire Federal Credit Union Relocating Bristol Branch
January 23, 2018
In "Cops, Courts and F

Sponsored Post

---

## RELATED POSTS


**COPS, COURTS AND FIRE** /
Bucks County DUI Task Force Honored


**COPS, COURTS AND FIRE** /
Grant Could Lead To Middletown Community Park Upgrade


**COPS, COURTS AND FIRE** /
Emergency Drill Taking Place At Bucks County Technical High School

View So Far

 **COPS, COURTS AND FIRE** /

Police Seek SUV In Hit-&-Run Crash

‹ Ready, Set, Crawl: Bucks County Diaper Derby
  Registration Open

Mosquito Spray Set For Friday In Bristol Twp. ›

^

BACK TO TOP



© LevittownNow.com 2018

Terms of Use

Design and Admin by McMaster Web Solutions

View So Far

# EXHIBIT L

**J. TODD SAVARESE**
ATTORNEY AND COUNSELOR AT LAW

80 NORTH SECOND STREET PIKE
CHURCHVILLE, PENNSYLVANIA 18966

(215) 322-7848 · TELEPHONE
(215) 322-3675 · FACSIMILE
todd@savareselaw.com · Email

December 26, 2017

Tom Scott
Bristol Township
Director of Building, Planning and Zoning
2501 Bath Road
Bristol, PA 19007

Re:   **Inspire Federal Credit Union - Bucks County Tax Map Parcel #05-029-092**

Dear Mr. Scott:

For my client, Inspire Federal Credit Union ("Inspire"), and at the direction of the Township's Special Counsel, Kimberly Freimuth, I am delivering the following completed documents:

1.   Application for Resale of Commercial Property;

2.   Business Establishment Form; and

3.   Copies of two separate Zoning Determination Applications filed with the Township by my client's buyer, Grace Land II, LLC.

As you know, the first Zoning Determination application was denied and is the subject of an appeal pending before the Bristol Township Zoning hearing board. I understand the second, more recent, application is pending a response by your office. Accordingly, these applications are provided in lieu of processing another Zoning Determination Application to complete the within commercial resale application. As well, this application is processed in good faith, and without prejudice to the guidance provided by your office indicating that a resale application is not required where, as here, the use of the subject property before and after the sale does not change. I will assume this filing satisfies the Township's requirements unless you advise me to the contrary, in writing.

Best wishes for a happy, healthy and safe New Year.

Sincerely,

J. Todd Savarese
JTS/s
Enclosures

cc:   Jim Merrill, President
      Bill Stewart, Esquire
      Kimberly Freimuth, Esquire

Township of Bristol
Department of Licenses & Inspections
2501 Bath Road, Bristol, PA 19007          Phone: 215-785-3680    Fax: 215-788-8541

## RESALE OF COMMERCIAL PROPERTY PROCEDURE

If you are selling the property and the tenants are staying the same only the Resale of Commercial Property needs to be filled out.

If you are selling the property and the tenants are **NOT** staying the same the following forms need to be filled out:

1.  Resale of Commercial Property
2.  Business Establishment Information Form
3.  Zoning Determination Application ($ 200.00 Fee is Required)

Any new businesses in Bristol Township require a Commercial Use & Occupancy Application.  The fee for Commercial U&O are based on the square footage that the business is occupying.

**Resale of Commercial Property**

**Township of Bristol**
**Department of Licenses & Inspections**
2501 Bath Road, Bristol, PA 19007      Phone: 215-785-3680   Fax: 215-788-8541

Application for: Resale of Commercial Property

**Owner(s)**   Name: INSPIRE FEDERAL C.U.   Tax Parcel #: 05-029-092

Address: 2104 Bath RD, Bristol, PA

Phone #: (Home) N/A   Work: (215) 788-5270

**Buyer(s)**   Name: GRACE Land II, LLC

Address: c/o Kaplin Stewart
Union Meeting Corp. Cte., 910 Harvest Dr. Blue Bell PA
19422

Phone #: (Home) N/A   Work: (610) 941-2555

Address of Property being transferred:

2104 Bath Ro, Bristol, PA   TMP # 05-029-092

**Realtor(s):** Ahia Commercial Real Estate

Address: 2050 Cabot Blvd. W., Suite 102, Langhorne, PA
19047

Phone #: (215) 757-2500   EXT. 101

**Agent(s) Name:** Chichi E. Ahia

**Agents Phone #:** (267) 981-9110

**Settlement Date:** December 18, 2017

**Date of Application:** 12/14/2017

Square Feet 10,524   Fee _____
Application # _____
Receipt # _____
Check # _____
   Name on Check _____
   Address _____
   Cash _____   Visa/MC _____

Signature of Applicant _____   Date: 12/14/17
   James M. Merrill
   President / CEO

Revised 01/23/07

# BRISTOL TOWNSHIP

## Office of the Fire Marshal

2501 Bath Road · Bristol, PA 19007 · (215) 785-0500 · Fax (215) 788-8541

### Business Establishment Form

BUSINESS NAME: _Inspire F.C.U._

BUSINESS ADDRESS: _2104 Bath Rd._

MAILING ADDRESS OF BUSINESS: _Bristol, PA   19007_

PHONE: _215-788-5270_   FAX: _____

E-MAIL ADDRESS _jmerrill @ inspire fcu. org_

FEDERAL ID NUMBER: _231390605_   STATE ID NUMBER: _____

INTENDED USE OF PROPERTY: _Same as current - credit union branch_

OWNER'S NAME: _Graceland, LLC._   HOME PHONE: _____

HOME ADDRESS: _____

tenant | MANAGERS NAME: _Ryan Inverso_   PHONE: _215-788-5270_

HOURS OF OPERATION: _M-F 9-5  S 9-2_   NUMBER OF EMPLOYEES _6_

insurer { INSURANCE COMPANY NAME: _PHILADELPHIA INSURANCE COMPANY_
1 BALA PLAZA
INSURANCE COMPANY ADDRESS: _BALA CYNWYD, PA_ PHONE # _1-877-438-7459_
19004
TYPE OF INSURANCE _ALL RISK / GENERAL LIABILITY_

POLICY NUMBER: _PHMK4387459_ EFFECTIVE DATE OF POLICY: _9/22/17_

**EMERGENCY INFORMATION   (Place in Priority Order)**

tenant | NAME: _Jim Merrill_   PHONE: _267-548-7001_

owner | NAME: _Jon Goodman_   PHONE: _305-851-1151_

NAME: _____   PHONE: _____

ALARM COMPANY: _Kriebel Security_

PHONE NUMBER: _215-679-5921_

RESTAURANT LIQUOR LICENSE # _n/a_   SERIAL # _n/a_
BOARD OF HEALTH NUMBER: _____

PROPERTY OWNERS NAME: _GRACE LAND II, LLC_

ADDRESS: _c/o PHIL KATZ,  46 CHESTERFIELD DRIVE JACKSON, NJ 08527_

PHONE NUMBER: _609-404-2877 (W)_

_917-270-2826_

**Township of Bristol**
**Department of Licenses and Inspections**
2501 Bath Road, Bristol, PA 19007
(215) 785-3680  Fax: (215) 788-8541

## Zoning Determination Application
(please print or type)

1) Property in Question (address): 2104 Bath Road, Bristol PA 19007
2) Business/Homeowner Name: Daybreak Treatment Solutions
3) Applicant Name: Grace Land II, LLC
4) Address: 1288 Veterans Highway          Phone: 609-577-7302
   Levittown PA 19056
5) Property/Building Owner Name: Inspire Federal Credit Union
6) Address: 2104 Bath Road, Bristol PA   Phone: 215-788-5270
7) Tax Map Parcel #: 05-029-092
8) Present Use: Office Building
9) Intended Use: Medical Office
10) Details of Intended Use: Outpatient treatment of persons with
    alcohol and drug addiction disorders
11) Height of New Structure or Addition, (if applicable), from grade plane to roof or peak
(include stories and/or feet):   Not applicable.

*)      AN IMPERVIOUS SURFACE CALCULATION SHEET MUST BE FILLED OUT
        COMPLETELY AND ACCOMPANY THIS FORM FOR REVIEW.
*)      PECO MUST BE NOTIFIED IF NEW STRUCTURE OR ADDITION WILL
        INFRINGE ON ANY ALLOWABLE DISTANCES TO ANY POWER LINES. IT IS
        YOUR RESPONSIBILITY TO HAVE POWER LINES MOVED OR REDESIGN
        YOUR INTENDED STRUCTURE TO COMPLY WITH THESE DISTANCES.
        CALL PECO FOR NECESSARY INFORMATION.
*)      THIS APPLICATION MUST BE FILLED OUT COMPLETELY FOR ACCEPTANCE
        FOR REVIEW.

>)      SIGNATURE OF APPLICANT: _____ Date: 12/6/17
                               Pamela M. Tobin, Esquire, counsel for Applicant
        OFFICIAL USE ONLY BELOW:

Zoning District:_____  Zoning Approved _____Zoning Not Approved _____

Comments: _____
          _____

Zoning Officer: _____ Date: _____

Permit #: _____  Receipt #: _____  Check #: _____ Fee: _____

Additional Comments: _____
_____
_____

**Township of Bristol**
**Department of Licenses and Inspections**
2501 Bath Road, Bristol, PA 19007
(215) 785-3680  Fax: (215) 788-8541

## Zoning Determination Application
(please print or type)

1) Property in Question (address): ___2104 Bath Road, Bristol, PA, 19007___
2) Business/Homeowner Name: ___Daybreak Treatment Solutions___
3) Applicant Name: ___Grace Land II, LLC___
4) Address: ___1288 Veterans Highway___ Phone: ___609-577-7302___
    ___Levittown, PA  19056___
5) Property/Building Owner Name: ___Inspire Federal Credit Union___
6) Address: 2104 Bath Road, Bristol, PA, 19007. Phone: 215-788-5270
7) Tax Map Parcel #: ___05-029-092___
8) Present Use: Office Building
9) Intended Use: ___Group Home___
10) Details of Intended Use: ___Treatment facility containing at least 35 beds___
    ___for the detoxification of persons who are addicted to drugs or alcohol___ *
11) Height of New Structure or Addition, (if applicable), from grade plane to roof or peak
(include stories and/or feet): ___Not Applicable___

*)   AN IMPERVIOUS SURFACE CALCULATION SHEET MUST BE FILLED OUT
     COMPLETELY AND ACCOMPANY THIS FORM FOR REVIEW.
*)   PECO MUST BE NOTIFIED IF NEW STRUCTURE OR ADDITION WILL
     INFRINGE ON ANY ALLOWABLE DISTANCES TO ANY POWER LINES. IT IS
     YOUR RESPONSIBILITY TO HAVE POWER LINES MOVED OR REDESIGN
     YOUR INTENDED STRUCTURE TO COMPLY WITH THESE DISTANCES.
     CALL PECO FOR NECESSARY INFORMATION.
*)   THIS APPLICATION MUST BE FILLED OUT COMPLETELY FOR ACCEPTANCE
     FOR REVIEW.         GRACE LAND II, LLC

>)  SIGNATURE OF APPLICANT: By: _____ Date: ___Sept. 12,___ 2017
                                        Member

OFFICIAL USE ONLY BELOW:

Zoning District:_____ Zoning Approved _____ Zoning Not Approved _____

Comments: _____
_____

Zoning Officer: _____ Date: _____

Permit #: _____ Receipt #: _____ Check #: _____ Fee: _____

Additional Comments: _____
_____
_____

*and who will remain in the building continuously for a period of up to 10 days while they
are being treated. The facility will be licensed by the Department of Drug and Alcohol
Programs of the Commonwealth of Pennsylvania.