IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GRACE LAND II, LLC, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-5413 |
| | : | |
| BRISTOL TOWNSHIP, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                        **September 30, 2019**

Plaintiffs Grace Land II, LLC (Grace Land) and Daybreak Treatment Solutions (Daybreak) bring claims against Defendants Bristol Township (the Township), Bristol Township Zoning Hearing Board (ZHB), Craig Bowen, William McCauley, and Thomas Scott (the Individual Defendants), individually and in their official capacities, for constitutional violations pursuant to 42 U.S.C. § 1983, and violations of the Americans with Disabilities Act and the Rehabilitation Act. Plaintiffs' claims arise from Defendants' refusal to issue a permit for operation of a medical office for outpatient treatment of persons suffering from alcohol and drug addiction disorders. Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendants' Motion to Dismiss will be granted in part and denied in part.

**FACTS**

Grace Land and Daybreak are associated entities providing outpatient treatment services for persons suffering from alcohol and drug addiction disorders. Jonathon Goodman is the sole owner of Grace Land and the majority owner of Daybreak. Daybreak is licensed through the Pennsylvania Department of Drug and Alcohol Programs to operate a medical office located in Levittown, Pennsylvania. Grace Land and Daybreak want to offer substance abuse and alcohol

rehabilitation services to more persons in the community than is currently offered at their location in Levittown.

At issue in this dispute is a parcel of land located at 2104 Bath Road, Bristol Township, Pennsylvania (the Property), which Grace Land purchased from Inspire Federal Credit Union (the Bank) on December 18, 2017. Daybreak has a leasehold agreement with Grace Land, as Grace Land's treatment branch, to operate a medical clinic at the Property. The Property comprises approximately 1.7 acres and is improved with a building containing approximately 9,758 square feet (the Building) and parking fields with spaces for approximately 59 vehicles. At the time of the purchase, the Property was zoned for commercial use, which permitted the Property to be used as a medical office providing outpatient treatment.

Prior to Grace Land's purchase of the Property, however, the Property was zoned for residential use. In November 2015, the Bank approached the Township to change the Property's zoning to commercial. While the Bank's zoning application was pending, Defendant Township Council President Craig Bowen told the Bank's president and CEO, James Merrill, the Township did not have a problem with rezoning the Property as long as the Bank did not intend to sell the Property to a drug and alcohol treatment provider. *See* Am. Compl. ¶ 29. On July 26, 2016, the Township rezoned the Property to commercial.

On September 8, 2017, the Bank and Grace Land entered into an agreement of sale for the Property. Grace Land subsequently submitted an application to the Township, requesting a use and occupancy permit to operate an inpatient detoxification facility at the Property (the Detox Application). Within days after the Detox Application was submitted, Defendant Township Manager William McCauley, telephoned Marc Kaplin, Esquire, the attorney representing Grace Land and told Kaplin the Township did not want a drug treatment facility operating on the

Property. *See* Am. Compl. ¶ 34. At a meeting on or about September 18, 2017, Township Council President Bowen, told Grace Land's real estate broker Jack Kitchen, "the Township had plans to build a water park next to the Property and the Township did not want any drug treatment facility at the Property." *Id.* ¶ 35. Township Council President Bowen was concerned addicts would try to use the water park to take showers. *Id.*

Township Council President Bowen suggested to Kitchen that Grace Land should purchase vacant school properties the School District[1] was offering for sale in the Township. After this suggestion, an affiliate of Grace Land, Progressive Living Unites & Systems of Pennsylvania (PLUS) submitted a good faith offer to the School District to purchase four of the five elementary schools located in the Township for $1.75 million. This offer was higher than the other offers the School District receive by nearly $800,000. The Township later countered with its own offer for the schools, matching the offer price, but seeking to acquire five schools rather than four. Plaintiffs allege the Township never intended to "make good" on its offer to buy the schools, but rather they were just "scheming to delay Grace Land from being able to use the Property as a drug and alcohol treatment facility." *Id.* ¶ 43.

On October 11, 2018, the Township denied the Detox Application. Grace Land learned of the denial on October 18, 2018. The following day, Kitchen arranged for Township Council President Bowen to meet with Goodman. At the meeting, Township Council President Bowen told Goodman and Kitchen the Township faulted the Bank for agreeing to sell the Property to Grace Land, when the Bank knew the Township did not want a drug and alcohol treatment facility at the Property under any circumstances. *See id.* ¶ 38. Township Council President Bowen also stated

---

[1] The Amended Complaint does not identify a specific school district. Accordingly, the Court uses the "School District" as identified by the parties.

the Township would not have approved the change to commercial zoning had it known a drug and alcohol treatment provider would buy the Property. *See id.* Plaintiffs agreed to hold their challenge to the denial of the Detox Application in abeyance while they submitted a second application.

On December 6, 2017, Grace Land submitted a second application to the Township for a permit to operate a medical office at the Property (the Medical Office Application). The medical office would provide rehabilitation outpatient treatment services to persons suffering from alcohol and/or drug addictions. Defendant Township Zoning Officer Thomas Scott, sent a letter stating he could not process the Medical Office Application without first having (a) "information on the certification of the outpatient treatment methods by a board or agency authorized by statute to issue such certification"; (b) the proposed hours of operation; and (c) the plan for off-street parking. *Id.* Ex. C, at 2.

In a letter to Zoning Officer Scott, Grace Land explained Daybreak is precluded from obtaining a state license to operate a treatment center at the Property until the Township issues the permit allowing for that use. Grace Land further explained the medical office would be located in 4,407 square feet of the Building, the same area which the Bank operated its retail branch and stated it would comply with the Township's parking requirements under § 205-120(7) of the Zoning Ordinance because only a total of 37 parking spaces would be needed. *See id.* Ex. D.

Zoning Officer Scott sent a second letter, requesting more information, including (1) a copy of the medical director's license, and (2) Grace Land's plans for using the remaining vacant portions of the Building. *See id.* Ex. F, at 1. Grace Land complied by providing a copy of the medical director's license and confirmed Grace Land had no current plans to utilize the rest of the Building. Grace Land stated it would apply to the Township for a permit when it decided on a plan for using the rest of the Building. *See id.* Ex. G, at 1-2.

On April 10, 2018, the Township denied the Medical Office Application and claimed it did not approve a split or separate use of a portion of the Building and "assumed for purposes of this determination that the entire building is proposed to be utilized for medical offices." *Id.* Ex. H, at 1. Based on this allegedly false premise, the Township denied the Medical Office Application for not meeting the Township's parking requirement. *Id.* at 1-2. The Township's requirement for Grace Land to reserve additional parking was contradicted by its allowance for the Bank to use the entire Building without additional parking although financial establishments are subject to the same parking requirements as the medical offices Grace Land proposed. *See id.* ¶ 55.

On March 16, 2018, Grace Land appealed the Township's denial of the Medical Office Application to the Defendant ZHB. At the May 14, 2018, ZHB hearing, Stacy Hill, an executive officer of Grace Land and Daybreak, testified to Grace Land's intent to operate the medical office solely in the 4,407 square foot portion of the Building and Grace Land would apply for a permit to use the remainder of the Building once it had a plan for that space. The Township did not offer any evidence to contradict Hill's sworn testimony. Hill further explained Daybreak utilizes its own vans to transport patients to and from treatment and therefore the patients will not be operating vehicles to and from the Property.

At the ZHB hearing, Township officials and residents opposed the proposed treatment center. At one point, the ZHB's Solicitor Ken Federman, voiced his skepticism over the Township's claim against Grace Land using only part of the Building. Specifically, he stated, "it's not really about the parking, because theoretically the board can do what the board wants to do, right?" *Id.* ¶ 60.

After hearing the Township and residents' opposition, the ZHB members unanimously, and without deliberation, voted to reject Grace Land's appeal. In its written June 28, 2018,

decision, the ZHB acknowledged the Property is zoned C-Commercial and "such zoning designation does allow[ ] for an outpatient medical office use pursuant to Section 205-36 and 205-16C(2) of the Zoning Ordinance." *Id.* Ex. I, at 4. Nonetheless, the ZHB denied Grace Land's permit, stating (1) the request for a permit constituted land development; (2) Grace Land could not satisfy the Township's parking requirements based upon the "assumption" that Grace Land would be using the entire Building; and (3) Grace Land was not entitled to occupy only a portion of the Building. *See id.* at 4-5. Plaintiffs allege these reasons were merely pretext.

To address the Township's pretextual concern with parking, on April 6, 2018, Grace Land applied for a building permit to add parking spaces within the Property's existing impervious surface area (the Building Permit). The Township denied the Building Permit, stating the proposed work constituted land development. *See id.* Ex. J, at 2. On May 31, 2018, Grace Land appealed the Township's denial to the ZHB. At the July 9, 2018, ZHB hearing, the Township and the residents again opposed Grace Land's Building Permit. At the conclusion of the residents' comments, without deliberation, the ZHB unanimously voted to reject Grace Land's appeal. In its written August 22, 2018 decision, the ZHB adopted the Township's argument requiring the Building Permit to receive land development approval.

Grace Land and Daybreak allege the ZHB's denial is in direct contradiction of Pennsylvania Supreme Court precedent "which establishes that development approval is only required when 'large-scale development of land' is involved." *Id.* ¶ 70 (citing *Upper Southampton Twp. v. Upper Southampton Twp. Zoning Hearing Bd.*, 934 A.2d 1162, 1167 (Pa. 2007)). Grace Land further alleges its Building Permit does not involve large-scale development of land because it seeks to reduce the Building improvements and the new parking will be located on the same

impervious surface already in existence. *Id.* ¶ 71. Again, Plaintiffs allege the reasons Defendants provided in denying their applications were merely pretextual.

On July 27, 2018, and September 21, 2018, Grace Land filed two separate land use appeals in the Court of Common Pleas of Bucks County, Pennsylvania (the Bucks County Appeals). On December 14, 2018, Plaintiffs filed the instant action alleging a claim under 42 § U.S.C. 1983 for violations of due process and equal protection (Count I), a claim under the Americans with Disabilities Act (ADA) (Count II), and a claim under the Rehabilitation Act (RA) (Count III). On January 10, 2019, Defendants moved to dismiss the Complaint. In response, Plaintiffs filed the Amended Complaint. Defendants then filed the instant Motion to Dismiss Plaintiffs' Amended Complaint on February 12, 2019.[2] The Court heard oral argument on the Motion on April 10, 2019.

After oral argument, on April 30, 2019, the Bucks County Court of Common Pleas (the Bucks County Court) issued its decision on Grace Land's appeals. The Bucks County Court's decision reversed ZHB's denial of both the Medical Office Application and the Building Permit. *See* Pls.' Mot. to Suppl. the R. on Defs.' Mot. to Dismiss (Pls.' Suppl.) Ex. A. The Bucks County Court reviewed the parking requirements needed for Plaintiffs' permit and held Plaintiffs' requirements "are actually less than those of the [Bank]." *Id.* at 5. The Bucks County Court also held Plaintiffs' Building Permit did not constitute a land development because it "would have the salutary effect of reducing the magnitude of the pre-existing non-conformity." *Id.* at 5-6. The Township appealed the Bucks County Court's decision to the Commonwealth Court, and on June

---

[2] Defendants also filed a Motion to Strike portions of Plaintiffs' Amended Complaint. "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). The Court will deny Defendants' Motion to Strike because the allegations sought to be struck are relevant to Plaintiffs' claims, demonstrate Defendants' discriminatory animus toward Plaintiffs, and do not prejudice Defendants.

25, 2019, the Bucks County Court filed a supplemental opinion.[3]  Defendants' Motion is now ripe for review.

**DISCUSSION**

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678.  In evaluating a Rule 12(b)(6) motion, a district court must separate the legal and factual matter elements of the plaintiff's claims.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

Defendants move to dismiss each of Plaintiffs' claims for several reasons. First, Defendants argued the Court should abstain from hearing this case pursuant to Younger v. Harris, 401 U.S. 37 (1971) until the Bucks County Court disposed of the two appeals which were still pending at the time of this Motion. Because the Bucks County Court has issued its decision, reversing the ZHB decisions and ordering the issuance of Plaintiffs' permits, Defendants' argument is now moot, and the Court will not further address it. Also, because Plaintiffs received the injunctive relief they sought in this Court in the Bucks County Appeals, the Court will dismiss the claims for injunctive

---

[3] Plaintiffs moved to supplement the record on Defendants' Motion to Dismiss with the Bucks County Court's opinion on July 1, 2019. *See* Pls.' Mot. to Suppl. the R. on Defs.' Mot. to Dismiss, July 1, 2019, ECF No. 18. Plaintiffs' Motion is granted and the Court will consider the Bucks County Court's supplemental opinion.

relief against all Defendants. *See Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 411-16 (3d Cir. 2005) (stating claims for injunctive relief in land use appeal were available in ongoing state proceedings); *Gordon v. E. Goshen Twp.*, 592 F. Supp. 2d 828, 837-38 (E.D. Pa. 2009) (dismissing claims as moot when, after filing complaint, plaintiffs received the injunctive relief originally sought).

Defendants next argue Plaintiffs lack standing to bring claims under either the ADA or the RA. Defendants assert Plaintiffs' standing is premised on third-party standing and Plaintiffs have failed to allege an existing relationship with any individuals who qualify for relief under the ADA or RA. "Standing is inextricably linked to the type of relief sought." *RHJ Med. Ctr., Inc. v. City of DuBois*, 754 F. Supp. 2d 723, 743 (W.D. Pa. 2010). If the remedy sought is damages, Article III requires the injury only be suffered by the entity. *See id.* Associating with prospective patients is permissible for purposes of ascertaining standing, as Article III grants standing if the injury is "actual or imminent." *Id.* at 742. An injury is actual or imminent if the plaintiff took "certain concrete steps towards opening of the [medical facility] and establishing a relationship with patients." *Id.*

Under the ADA and RA, an entity's standing is not limited to suits on behalf of its members or clients. An entity may also sue "in its own right." *See Addiction Specialists, Inc.*, 411 F.3d at 406-07. While entities are "protected by these statutes only by virtue of [their] association with disabled individuals, [their] standing to sue arises from [their] own alleged injuries, not those of [their] clients." *Id.* at 407. Defendants' argument is premised on Plaintiffs only seeking relief on behalf of their clients. The Amended Complaint, however, establishes Plaintiffs are injured by "alleged violations of [their] own rights under the ADA and RA." *See* Am. Compl. ¶¶ 106-09, 115-18 ("Plaintiffs have expended time and financial resources and have lost the opportunity to

conduct their business and provide a much-needed service."). Plaintiffs have sufficiently alleged they were denied the Medical Office Application and Building Permit because of their association with potential clients who are individuals with disabilities. Plaintiffs also took "certain concrete steps" toward opening a medical facility to help recovering alcohol and drug addicts by purchasing the Property and filing the requisite Medical Office Application and Building Permit. The injury to prospective patients was sufficiently imminent to establish standing in this case. *See RHJ Med. Ctr., Inc.*, 754 F. Supp. 2d at 743 (finding plaintiff who attempted to open a methadone clinic had standing to bring claims for injunctive relief where it entered into a ten-year lease, renovated the building to meet Pennsylvania Department of Health standards, and took steps toward obtaining the requisite licenses). The Court thus finds Plaintiffs have established standing for damages under the ADA and RA. *See Addiction Specialists, Inc.*, 411 F.3d at 407 (holding organization had standing in its own right by way of its association with prospective clients who would qualify as disabled under ADA); *RHJ Medical Ctr., Inc.*, 754 F. Supp. 2d at 739-40 (stating medical clinic's prospective clients were sufficient to establish a relationship for organizational standing). Defendants' Motion to Dismiss is denied on this ground.[4]

---

[4] Defendants argue even if Plaintiffs establish standing by their relationship with the individuals they will serve, the individuals do not qualify under the ADA and RA because the individuals "currently engag[e] in the illegal use of drugs." Defs.' Mot. to Dismiss 9. Although individuals using drugs are typically excluded from ADA and RA protections, persons with drug addictions are entitled to protections offered by the ADA and RA in connection with their attempts to obtain drug rehabilitation services. *See RHJ Med. Ctr.*, 754 F. Supp. 2d at 749-50. Plaintiffs have alleged their patients are recovering addicts, *see* Am. Compl. ¶ 23. Taken as true, these allegations are sufficient to withstand Defendants' motion to dismiss. *See New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 308 (3d Cir. 2007) (stating person who has completed or is currently participating in rehabilitation program is no longer engaging in drug use and qualifies under ADA and RA). Because this determination is subject to a factual inquiry, however, Defendants may reassert this argument at a later stage if warranted. *See id.* at 310 (stating question of whether drug use is ongoing problem is a "fact bound inquiry" requiring analysis of treatment protocols).

The Court next turns to Defendants' argument that Plaintiffs have failed to state a claim for a violation of their substantive due process and equal protection clause rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Section 1983 which creates a statutory mechanism for private individuals to vindicate their federal constitutional rights.[5] *See Albright v. Oliver*, 510 U.S.C. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." (internal quotation marks omitted)). To prevail on their claims, Plaintiffs must produce evidence that "a person acting under color of state law engaged in conduct that violated a right protected by the Constitution or laws of the United States." *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). In evaluating a § 1983 claim, the Court must first "identify the exact contours of the underlying right said to have been violated." *Id.* at 166 (quoting *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)). The Court must then "determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.*

Defendants argue because Plaintiffs have failed to plead their § 1983 claims because they cannot establish an underlying violation of their constitutional rights. Specifically, Defendants argue Plaintiffs have failed to plead (1) sufficient facts alleging conduct that "shocks the conscience" on the substantive due process claim, or (2) sufficient facts alleging a similar medical

---

[5] In pertinent part, 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

facility was treated differently than Plaintiffs' on the equal protection claim. In the Amended Complaint, Plaintiffs allege Defendants denied their Medical Office Application and Building Permit because of their bias against recovering alcohol and drug addicts. *See, e.g.*, Am. Compl. ¶ 94-98.

The Due Process Clause of the Fourteenth Amendment protects an individual against arbitrary action of the government. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The Supreme Court, however, has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks omitted). Official conduct is sufficiently egregious only when it "shocks the conscience." *Id.* at 846–47. Application of the "shocks the conscience" standard in the zoning context prevents federal courts from being cast in the role of a "zoning board of appeals." *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 402 (3d Cir. 2003).

"What shocks the conscience, however, is a flexible standard that depends on the factual context of the particular case at hand." *Assocs. In Obstetrics & Gynecology v. Upper Merion Twp.*, 270 F. Supp. 2d 633, 654 (3d Cir. 2003). The determination is not a "precise" or technical exercise, *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004), and the Third Circuit has recognized determining whether conduct qualifies as conscience-shocking "varies depending on the context." *United Artists Theatre Circuit, Inc.,* 316 F.3d at 399 n.5. The Supreme Court has noted that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

The Amended Complaint alleges Defendants denied Plaintiffs' Medical Office Application and Building Permit because of their bias against recovering alcohol and drug addicts. *See* Am. Compl. ¶ 94-98. Taking the allegations as true, the Court finds Defendants (1) stated—on more

than one occasion—they did not *want* to have a drug treatment facility at the Property, *see id.* ¶ 29, 34-35, 38; (2) attempted to persuade Plaintiffs to find another location and later prevented Plaintiffs from acquiring that different location, *see id.* ¶ 35-43; (3) stated the Township hoped to build a water park and worried Plaintiffs' patients "would try to use the water park to take showers," *see id.* ¶ 35; (4) stated they would not have approved the commercial zoning if they knew that a drug and alcohol operator would buy the Property, *see id.* ¶ 38; and (5) the ZHB Solicitor announced he believed the denials were "not really about the parking," *see id.* ¶ 60. Plaintiffs' allegations of bias and discriminatory animus are even more plausible in light of the Bucks County Court issuing its decision reversing Defendants' denials of the Medical Office Application and the Building Permit. *See* Pls.' Suppl. Ex. A.

With these allegations, and drawing all reasonable inferences in Plaintiffs' favor, the Amended Complaint has alleged conduct which shocks the conscience because, as alleged, Defendants' conduct was intended to injure Plaintiffs and was done with a complete lack of a legitimate government interest—i.e., discriminatory animus towards Plaintiffs and their potential clients. *See Assocs. In Obstetrics & Gynecology*, 270 F. Supp. 2d at 655-56 (stating a plaintiff-medical provider could assert a substantive due process claim against a township and zoning hearing board where the plaintiff alleged it was denied a permit to operate an abortion clinic based on discriminatory animus); *E. Rockhill Twp. v. Richard E. Pierson Materials Corp.*, 386 F. Supp. 3d 493, 500 (E.D. Pa. 2019) (stating shocks the conscience test requires a demonstration of a lack of a legitimate government purpose); c*f. Eichenlaub*, 385 F.3d at 286 (stating local officials accused of denying land use development because of bias against an ethnic group rises to level of shocking the conscience). Although the Amended Complaint "hint[s] at a possible legitimate reason" for Defendants' denials—such as responding to the public interest—at this stage, Plaintiffs

have alleged sufficient facts to proceed to discovery on this claim. *Cornell Cos., Inc. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 260-61 (E.D. Pa. 2007) (denying motion to dismiss because plaintiff alleged non-legitimate government purpose and despite possible legitimate reason for allegedly discriminatory zoning practices). Defendants' Motion to Dismiss is therefore denied on Plaintiffs' substantive due process claim in Count I.

Turning to the Plaintiffs' equal protection claim, Defendants argue Plaintiffs have failed to identify another medical facility that Defendants treated differently than Plaintiffs. To state a cognizable claim pursuant to the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must first establish it is similarly situated to other entities. *See Cty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 171 (3d Cir. 2006) (citing *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 137 (3d Cir. 2002). "Persons are similarly situated under the Equal Protection Clause when they are alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotations omitted). In *Congregation Kol Ami v. Abington Township*, the Third Circuit noted district courts must consider "whether the two entities have the same impact" on the surrounding community and whether the entities are similar in "scale," "purpose," and "intensity" of land use. 309 F.3d at 139, 142.

In this instance, Plaintiffs concede the Bank and Daybreak are not similar in purpose. *See* Pls.' Resp. in Opp'n to Mot. 18 ("Although the Bank and Daybreak Treatment *are clearly providing different services*, they are roughly equivalent."). The Bank and Daybreak being "roughly equivalent" does not satisfy the similarly situated test as a matter of law. *See Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.*, 867 F.3d 338 (3d Cir. 2017) (finding secular health clinic opposed to contraceptive health mandate not similarly situated in purpose to religious entity with same opposition). Other than the Bank, the Amended Complaint does not

identify any other similar medical facilities treated differently than Plaintiffs. As a result, Plaintiffs have failed to allege the threshold requirement being similarly situated to other entities. Defendants' Motion to Dismiss will therefore be granted as to Plaintiffs' § 1983 equal protection claim in Count I.

Next, The ZHB and Zoning Officer Scott argue they are entitled to "quasi-judicial" absolute immunity. The Individual Defendants also make several arguments to dismiss the claims against them in both their individual and official capacities, including (1) the claims against them in their official capacities are duplicative of the claims against the Township and ZHB and should be dismissed; (2) they are not subject to suit under the ADA or RA; and (3) they are entitled to qualified immunity as to the claims against them in their individual capacities.

Regarding the Individual Defendants' argument that the claims against them in their official capacities are duplicative of those against the governmental entities, the Court agrees. Pursuant to *Hafer v. Melo*, there is complete symmetry between a governmental entity as a defendant and the officers who hold positions in that governmental entity in their official capacities. *See* 502 U.S. 21, 25 (1991). Plaintiffs' official capacity claims against Township Council President Bowen, Township Manager McCauley, and Zoning Officer Scott are duplicative of claims against the Township and must be dismissed. *See A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 580 (3d Cir. 2004) ("A suit against a governmental official in his or her official capacity is treated as a suit against the governmental entity itself."). The Court will dismiss Plaintiffs' claims against the Individual Defendants in their official capacities.

Turning to the issue of quasi-judicial immunity, the Court finds ZHB is not entitled to absolute immunity and reserves ruling on whether Zoning Officer Scott is entitled to absolute immunity. Judicial immunity is extended to those performing "quasi-judicial functions." *Bass v.*

*Attardi*, 868 F.2d 45, 49–50 (3d Cir. 1989). The Third Circuit has stated members of a zoning board who are ruling on a zoning permit for a particular piece of property are performing a quasi-judicial function. *See Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp.*, 181 F.3d 403, 409 (3d Cir. 1999) (citing *Urbano v. Meneses*, 431 A.2d 308, 311 (Pa. Super. Ct. 1981)). A township and township zoning hearing board, however, are not entitled to absolute immunity. *See Bass*, 868 F.2d at 50-51 (stating governmental entity has "no immunity whatsoever"). Therefore, ZHB is not entitled to absolute immunity and the Court will deny Defendants' Motion on this basis.

Regarding the individual capacity claims against Zoning Officer Scott, it is possible he may be entitled to absolute immunity in his individual capacity. *See Bass*, 868 F.3d at 50-51 (holding members of planning board were entitled to absolute immunity where their duties were "so integrally related to the judicial process as to warrant shielding from liability"). The record, however, is not sufficiently developed to make this determination. *See Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (identifying six characteristics to assist in the inquiry of quasi-judicial immunity: (1) the need to assure that the individual can perform his functions without harassment and intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctibility of error on appeal). The Court reserves ruling on whether Zoning Officer Scott (or any of the other Individual Defendants) are entitled to absolute quasi-judicial immunity until the record is more developed.[6] *See, e.g.*, *Lonzetta Trucking and Excavating Co.*, 144 F. App'x at 210-11 (determining

---

[6] In Defendants' brief, they state broadly, "the individual Defendants are entitled to absolute immunity." Within the text of the argument, however, Defendants only identify Zoning Officer Scott and ZHB as being "charged with the enforcement and application of the Township's Zoning

absolute immunity at the summary judgment stage); *Long v. Bristol Twp.*, No. 10-1069, 2012 WL 2864410, at *1 (E.D. Pa. July 11, 2012) (determining absolute immunity on a summary judgment record). Defendants' Motion on this point is thus denied without prejudice as to reassertion.

The Individual Defendants next argue Plaintiffs' claims against them in their individual capacities are not cognizable under the ADA or RA. First, the RA applies only to entities that receive federal financial assistance. *See Koslow v. Pennsylvania*, 302 F.3d 161, 170 (3d Cir. 2002) (quoting 29 U.S.C. § 794(a) (providing that the RA applies only to "any program or activity receiving Federal financial assistance")). Because Plaintiffs do not allege the Individual Defendants receive federal financial assistance, the individual capacity RA claims against them must be dismissed. *See Mohney v. Pennsylvania*, 809 F. Supp. 2d 384, 392-93 (W.D. Pa. 2011) (dismissing RA claims against individually named defendants where plaintiffs did not allege they received federal financial assistance).

Second, under the ADA, the Third Circuit has found there is generally no individual liability. *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) ("[W]e hold that the individual . . . defendants . . . are not subject to individual liability under . . . the ADA."). An exception exists when an individual is sued for prospective injunctive relief. *See Koslow*, 302 F.3d at 168 (stating "a person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the 'legal fiction' of *Ex parte Young*" 209 U.S. 123, 159–60 (1908)). Because the Court has dismissed all Plaintiff's claims for injunctive relief as moot in light of the Bucks County Court's decision in the Bucks County Appeals, the exception does not

---

Ordinance" and making "discretionary determinations" such that they are entitled to absolute immunity. *See* Defs.' Mot. to Dismiss 16. The Court construes the argument for absolute immunity to apply only to ZHB and Zoning Officer Scott. Insofar as Defendants assert the argument as to the other Individual Defendants, the Motion is likewise denied without prejudice, as to reassertion.

apply and only Plaintiffs' claim for damages is at issue—which is non-cognizable. *See McQuaid v. Acts Ret. Cmtys. Southampton Estates*, No. 04-3620, 2005 WL 2989642, at *2 (E.D. Pa. 2005) (dismissing ADA claims against individual defendants because there is no individual liability under the ADA). Accordingly, Defendants' Motion will be granted insofar as the ADA claim seeking damages from the Individual Defendants is dismissed.

For the remaining individual capacity substantive due process claim, the Individual Defendants argue they are entitled to qualified immunity because their decision was premised on the language of a lawful ordinance and they were thus not aware their actions deprived Plaintiffs of their constitutional rights. *See* Defs.' Mot. 18. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (internal quotations omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (internal quotations omitted). Government officials are not liable under § 1983 "as long as their actions reasonably could have been thought consistent with the rights they are alleged to have violated." *Kedra v. Shroeter*, 876 F.3d 424, 434 (3d Cir. 2017).

In deciding whether qualified immunity applies, the Court must consider two questions: "First, the constitutional question is 'whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right'[;] . . . Second, the qualified immunity question is 'whether the right at issue was "clearly established" at the time of a defendant's alleged misconduct.'" *Southerland v. Pennsylvania*, 389 F. App'x 166, 170 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The first prong is a "factual question," which is appropriate for juries

to decide, while the second prong should be decided by courts. *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007).

With respect to the first question, the Amended Complaint alleges the Individual Defendants exercised their authority to deny the Medical Office Application and the Building Permit for discriminatory reasons. As discussed, Plaintiffs have alleged sufficient facts to survive the motion to dismiss stage for their substantive due process claim. Specifically, Plaintiffs allege the Individual Defendants acted with discriminatory animus in their participation in denying their permits and stated numerous times, they did not want the proposed treatment center at the Property. Plaintiffs have also alleged Defendants' reliance on zoning ordinances was pretextual to their true bias against Plaintiffs and their prospective clients. *See supra* (discussion on substantive due process claim). The Individual Defendants' alleged conduct, if true, violated Plaintiffs' constitutional rights. *See Pa. Care, LLC v. Borough*, No. 10-956, 2011 WL 1135008, at *6 (E.D. Pa. Mar. 25, 2011) (denying motion to dismiss on the grounds of qualified immunity where the defendant was alleged to have shut a methadone clinic due to discriminatory animus toward recovering drug addicts).

Defendants assert, however, Plaintiffs' substantive due right was not clearly established because "reasonable members of a municipal governing body in Pennsylvania would not have known that a decision, based upon the express language of an otherwise lawful Township Zoning Ordinance and SALDO, to deny a use and occupancy application of a medical office would deprive Plaintiffs of any constitutional rights." Defs.' Mot. to Dismiss 18. This argument is unpersuasive in light of Plaintiffs' allegations. Plaintiffs do not allege the Individual Defendants unreasonably relied on or incorrectly interpreted the land use ordinances. Rather, Plaintiffs allege the reliance on the ordinances was pretext for the underlying discriminatory animus toward them and their

clients. *See* Am. Compl. ¶¶ 56, 60, 74. Plaintiffs allege Defendants' denials of the Medical Office Application and Building Permit were contradictory to established land use law, and when coupled with the discriminatory comments and other conduct, show Defendants did not rely on the stated land use ordinances. *See In re Montgomery Cty.*, 215 F.3d 367, 377 (3d Cir. 2000) (holding complaint alleging pretext for discriminatory action sufficiently alleged clearly established right to be free from discrimination and denying qualified immunity at motion to dismiss stage).

Although neutrally applying an ordinance would not violate a clearly established right, Defendants' alleged conduct in denying Plaintiffs' zoning and permits based on irrationality, arbitrariness, and discrimination, *does* violate a clearly established right. *See United Artists Theatre Circuit, Inc.*, 316 F.3d at 398-402 (holding land use decisions violate substantive due process where governmental conduct "shocks the conscience"); *Cty. Concrete Corp.*, 442 F.3d at 170 (stating improper animus is not a legitimate reason for enacting a zoning ordinance and violates substantive due process). In this case, the allegations state Defendants acted intentionally to discriminate against Plaintiffs for their association with patients who suffer and are recovering from drug and alcohol addiction. Plaintiffs have the right to be free from land zoning decisions based on discriminatory animus rather than legitimate land zoning purposes. *See Cty. Concrete Corp.*, 442 F.3d at 170. Defendants are therefore charged with knowledge of Plaintiffs' fundamental constitutional right in substantive due process. *See Assocs. In Obstetrics & Gynecology*, 270 F. Supp. 2d at 661 ("charging" defendants with knowledge of plaintiffs constitutional rights). Accordingly, because qualified immunity is not clearly established from the face of the complaint, the Individual Defendants' qualified immunity argument is denied. *See id.* (denying qualified immunity at motion to dismiss stage where complaint alleged defendants intentionally discriminated against medical clinic).

Nevertheless, because Plaintiffs must still prove that the Individual Defendants violated their substantive due process rights and defendants may still show their decisions were based on their interpretations of the zoning ordinances, the Individual Defendants may reassert their qualified immunity argument at a later date, if necessary. *See Stanley v. City of Pittsburgh*, 2015 WL 13745262, at *9 (W.D. Pa. Nov. 24, 2015) (rejecting qualified immunity at motion to dismiss stage because determination of whether a decision occurred with discriminatory or non-discriminatory motivations is a question of fact) (citing *In re Montgomery Cty.*, 215 F.3d at 377). The Court will deny the Motion as to Plaintiffs' substantive due process claim against the Individual Defendants in their individual capacities.

**CONCLUSION**

For the above stated reasons, Defendants' Motion will be granted as to Plaintiffs' equal protection claim in Count I, all claims against the Individual Defendants in their official capacities in Counts I - III, the RA claims against the Individual Defendants in their individual capacities for damages in Count II, the ADA claims against the Individual Defendants in Count III their individual capacities for damages, and all claims for injunctive relief in light of the Bucks County Court's decision in the Bucks County Appeals. Defendants' Motion will be denied with respect to Plaintiffs' substantive due process claim, the claims against ZHB and Zoning Officer Scott, and the Individual Defendants in their individual capacities.

An appropriate order follows.

BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.